HALL, Judge.
The plaintiffs seek to recover from their homeowners insurer for structural damage to a house they formerly owned resulting from various shiftings and movements of the soil underlying the foundation, which, in turn, resulted from leakage or seepage from a damaged water pipe beneath the foundation. The trial court held this damage was not covered by the insurance policy and rejected plaintiffs’ demand at their costs. The plaintiffs have appealed and we affirm the trial court’ judgment.
On July 31, 1979, the plaintiffs filed this suit alleging that their residence had sustained certain structural damage which was noticed by the plaintiffs on or about July 81,1978. It was alleged that the structural damage involved in this case consisted of severe cracking of the foundation and brick veneer walls of the house. The interior sheetrock walls of the residence also experienced cracking and the doors of the residence ceased to open and close properly. It was further alleged in plaintiffs’ petition that the damage at issue was caused by leaking water and was covered under the plaintiffs’ homeowners insurance policy.
The defendant answered plaintiffs’ petition, averring that the plaintiffs’ claim had prescribed because suit was not filed within one year of the inception of the loss as required by the policy and that the loss the plaintiffs suffered was expressly excluded by the terms of the policy.
Sometime during the early spring of 1978 a leak developed in a water pipe beneath the plaintiffs’ foundation. The plaintiffs first noticed that water was seeping or leaking out from under their house sometime during the early part of March 1978. Shortly thereafter, sometime prior to March 27, 1978, the plaintiffs had a plumber come out to their house on two separate occasions in attempts to correct the leak. The second attempt, which was a rerouting of a hot water line, succeeded in stopping the leak. This successful attempt occurred approximately one to three weeks after the rerouting of a cold water pipe failed to eliminate the problem.
Following the correction of the water leak in March, sometime in May or June 1978, the plaintiffs first noticed the structural cracking complained of. By letter dated July 31, 1978, the plaintiffs notified their insurer that they wished to file a claim for this damage. On August 29,1978, the civil engineer who offered expert testimony in this case examined, at defendant’s request, the exterior walls and foundation of the plaintiffs’ residence in an attempt to determine the cause of the cracking being experienced. He determined that the damage was directly related to water leakage or seepage which went uncorrected for an extended time period. The plaintiffs testified that the cracking subsided approximately one or two months after the engineer’s inspection, sometime in September or October 1978. Based on the engineer’s report, the defendant insurer, Commercial Union, denied coverage for the loss by letter dated January 30, 1979. Plaintiffs then filed suit on July 31, 1979. At the time of trial, the parties stipulated that the damage to the *468 plaintiffs’ former residence amounted to $9,745.
The trial court found that “the damages were caused by the sinking, rising or shifting of the earth as a result of its soaking up of the water from the ruptured pipe, as well as water below the surface exerting pressure on or flowing, seeping or leaking under the foundation from the ruptured water pipe.” The trial court also found that specific exclusionary language in the policy applied to this situation and held that no coverage existed. The trial court expressed no opinion on the prescription issue.
On appeal, Commercial Union again urges that the plaintiffs’ claim is barred by prescription or, alternatively, is excluded from coverage under the terms of the policy. We agree with the latter contention and, consequently, pretermit discussion of the prescription issue.
The insurance policy insures against certain specific perils and losses. There are two sections of the policy which arguably would provide coverage for the loss incurred by the plaintiffs in this case.
One of the perils insured against by the policy in question is damage resulting directly from the “[c]ollapse of buildings or any part thereof.” However, the policy specifically excludes from the definition of a collapse "... settling, cracking, shrinkage, bulging or expansion.” The expert testimony in this case establishes that the plaintiffs’ damage resulted from the expansion, shrinkage and shifting of the clay soil underlying the concrete foundation of their former residence, which caused the house to settle and resulted in the cracking of the walls and foundation complained of. Furthermore, the expert testimony excludes with reasonable certainty the likelihood that the damage suffered arose in any manner other than that described above. Consequently, we conclude that the insurer met its burden of proving that the limited coverage provided for damage resulting directly from the collapse of a building as defined by the policy does not encompass this damage. See Samuel v. Sewerage & Water Board of New Orleans, 181 So.2d 243 (La. App. 4th Cir.1965), writ refused 248 La. 1029, 183 So.2d 651 (1966).
The homeowners policy here involved also provides limited coverage for loss occasioned by “[ajccidental discharge or overflow of water ... from within a plumbing . .. system.” However, the policy specifically excludes loss “to the building caused by continuous or repeated seepage or leakage over a period of weeks, months or years.... ” Since the evidence establishes that the damage at issue was caused by prolonged continuous leakage or seepage, we agree with the trial court’s determination that this provision of the policy does not afford the plaintiffs coverage.
It was the opinion of the civil engineer who offered expert testimony in this case that the damage sustained by the plaintiffs’ former residence was directly attributable to leakage or seepage from a water pipe beneath the plaintiffs’ foundation. Furthermore, he opined that the leakage or seepage was continuous in nature and went uncorrected for an extended period of time, several months. The Howards acknowledged the existence of the water leak but contended that it was promptly corrected. However, the expert’s analysis of the on-site, physical indications of the manner in which the water leak acted upon the soil underlying the house is logically sound and convinces us that the leak in fact went uncorrected over a sufficiently long time frame to fall within the policy’s exclusionary language.
During his inspection, the expert discovered a wide, flat depression adjacent to the west wall of the house. This depression extended outward from the wall for several feet and was approximately three to four feet in width. Within this depressed area, there was a space between the concrete foundation and the underlying soil of approximately one to three inches. The evidence establishes that this depression was caused by water from the damaged pipe passing from beneath the foundation once the soil beneath the slab had become saturated. The expert testified that the wide, flat shape of the depression indicated that *469 water had been slowly and continuously passing from beneath the house for an extended time period. Had the water forced its way from beneath the slab quickly and the leak existed for a much shorter time period, the expert testified, then a more angular trench-like depression would have been found at the point of its exit. Consequently, he concluded, as do we, that the water leakage or seepage involved in this case occurred continuously over an extended time period. The loss resulting from such seepage or leakage is specifically excluded by the terms of the policy.
This damage was the result of the settling of the house after the water which had saturated the clay soil beneath its foundation was no longer present. This water came from a damaged pipe beneath the foundation which slowly leaked or seeped for an extended period of time, more likely than not several months. Since the damage resulted from continuous leakage or seepage over an extended period of time, this damage is not covered by the plaintiffs’ homeowners policy.
The plaintiffs’ argument for coverage places great reliance upon our recent decision of Primm v. State Farm Fire & Cas. Co., 426 So.2d 356 (La.App. 2d Cir.1983), which we find readily distinguishable from the case presently before us. In Primm we found that the insurer had, by coupling the phrases “leakage or seepage” and “sudden and accidental” together, created a definitional ambiguity in the policy’s language which had to be construed against it, and we held coverage existed. The policy presently before us provides coverage for “.. . [accidental discharge or overflow of water ... from within a plumbing ... system ...” but specifically excludes loss “.. . caused by continuous or repeated seepage or leakage over a period of weeks, months or years.... ” The limitation on coverage utilized by the insurer in this case, as opposed to the ambiguous extension of coverage utilized in Primm, creates no ambiguity with respect to coverage and clearly excludes the loss suffered by these plaintiffs.
For the reasons assigned, the judgment of the trial court rejecting plaintiffs’ demand at their costs is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants, Robert Howard and Floy Duke Howard.
Affirmed.