U.E. TEXAS ONE–BARRINGTON, LTD., Plaintiff,

v.

GENERAL STAR INDEMNITY COMPANY, and Firemans Fund Insurance Company of Ohio, Defendants.

No. CIV.A.SA–00–CA–129–OG.

United States District Court, W.D. Texas, San Antonio Division.

Dec. 11, 2001.

654

Scott A. Stewart, Horsley & Stewart, Dallas, for U.E. Texas One–Barrington, Ltd., Texas One Partnership, plaintiffs.

Beth D. Bradley, Thompson, Coe, Cousins & Irons, L.L.P., Ellen Lewis Van Meir, Thompson, Coe, Cousins & Irons, L.L.P., Sidney H. Davis, Jr., Touchstone, Bernays, Johnston, Beall & Smith, Mark L. Nastri, Munsch Hardt Kopf & Harr, P.C., Dallas, TX, for General Star Indemnity Company, Fireman's Fund Insurance Company of Ohio, defendants.

## ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ORLANDO L.GARCIA, District Judge.

On this date came on to be considered the Report and Recommendation of United States Magistrate Judge Pamela A.

Mathy (Dkt.# 58) filed in the above-styled and numbered cause on August 3, 2001.; Plaintiff's Objections to said Report and Recommendation (Dkt.# 60); Defendant Fireman's Fund's Response to Plaintiff's Objections (Dkt.# 61); and Defendant General Star's Response to Plaintiff's Objections (Dkt.# 62).

Where any party objects to the Report and Recommendation, the Court must review those portions of the report de novo.[1] Such a review means that the Court will examine the entire record and make an independent assessment of the law. The Court need not, however, conduct a *de novo* review when the objections are frivolous, conclusive, or general in nature.[2]

After having conducted an independent and *de novo* review of the record, the matters raised by Plaintiff's objections,[3] and the applicable law, the Court concurs entirely with the factual and legal findings in the Report and Recommendation and is of the opinion that the Report and Recommendation be accepted.

1. *See* 28 U.S.C. § 636(b)(1) (a judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made); *see also Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646 (5th Cir.1994), *cert. denied*, 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 492 (1994).

2. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987).

3. First, Plaintiff contends the Magistrate Judge misinterpreted, and therefore misapplied, the insurance policy's 14–day continuous leak exclusion. Plaintiff's contention is without merit. The Magistrate Judge correctly determined that General Star was entitled to summary judgment on the facts that (1) the exclusion clause was unambiguous; (2) the unambiguous terms of the exclusion clause denied coverage for loss or damage to the foundations by the continuous and repeated leakage of water for more than 14 days and (3) that plaintiff failed to defeat summary judgment on this issue by failing to show that

IT IS ORDERED that the Report and Recommendation of United States Magistrate Judge Mathy (Dkt.# 9) be and is hereby ACCEPTED in its entirety pursuant to 28 U.S.C. § 636(b)(1) and 72(b).

Accordingly, IT IS FURTHER ORDERED Defendant General Star's first motion for summary judgment—14 day continuous leakage exclusion and costs (Dkt.# 43) be GRANTED.

It is FURTHER ORDERED that Defendant General Star's second motion for summary judgment—allocation (Dkt.# 44) be DENIED with respect to mounds in the interior portion of the foundations but GRANTED in all other respects.

IT IS FURTHER ORDERED that Defendant' Fireman's Fund's motion for summary judgment (Dkt.# 45) be GRANTED IN PART with respect to its claim that Texas One's claim does not reach the threshold for coverage under the Excess Policy and DENIED IN PART with respect to the claim that two exclusions to the Excess Policy bar Texas One's claim.

a genuine issue of material fact existed that foundation damage, due to the leakage of water, had occurred during the 14 day period. In fact all evidence and expert reports showed otherwise—the damage occurred after water had leaked continuously for a period longer than fourteen days.

Second, Plaintiff contends the Magistrate Judge erred in determining that Plaintiff was not entitled to coverage for costs incurred for "access to repair the plumbing leaks." Plaintiff's contention is without merit. Plaintiff seeks to create coverage out of whole cloth. Here the policy clearly requires that a covered loss must occur before costs for repair are payable. Additionally, the loss, as discussed supra, was excluded from coverage. It follows, therefore, that costs for access to make repairs is equally excluded.

Plaintiff's third contention is without merit. The Magistrate Judge correctly applied prevailing Fifth Circuit and Texas case law when determining whether or not Plaintiff's claim for coverage did not reach the threshold for coverage under the Excess Policy.

IT IS FURTHER ORDERED that any relief not expressly granted herein is DENIED.

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE

MATHY, United States Magistrate Judge.

Pursuant to the referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge [1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrates, effective January 1, 1994, in the Western District of Texas, the following report is submitted for your review and consideration.

### I. *JURISDICTION*

The Court has diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

### II. *PROCEDURAL HISTORY*

On or about November 1, 1999, plaintiff, U.E. Texas One–Barrington Ltd., and Texas One Partnership, a California Limited Partnership (hereinafter collectively referred to as "Texas One" or "plaintiff") filed suit in Bexar County, Texas in the 150th Judicial District Court against defendants, General Star Indemnity Company ("General Star") and Fireman's Fund Insurance Company of Ohio ("Fireman's

Fund").[2] Texas One seeks in its suit "to recover benefits under its insurance policies to which it is entitled" as a result of damages sustained to the Oak Meadow Apartment complex located in San Antonio, Texas, owned by Texas One, covered by a Texas Commercial Property Policy issued by General Star ("the General Star policy") and a Commercial Excess Property Policy issued by Fireman's Fund ("the Fireman's Fund policy"), including damages, reasonable attorney's fees, statutory damages, pre and post judgment interest and costs.[3] On January 28, 2000, General Star and Fireman's Fund filed a joint notice of removal.[4]

On June 6, 2000, General Star filed its first amended answer to Texas One's original petition [5] raising affirmative defenses that "[Texas One] has failed to meet the conditions of the policy" in that Texas One failed to give General Star "prompt notice of the loss or damage," "a complete description of how, when and where the damage occurred" and "a signed proof of loss containing information requested by General Star within sixty days after General Star's request." [6] General Star further pleaded that policy limitations exclusions "may apply to bar coverage for the claimed damage to the Oak Meadow Apartments." [7] Also, General Star pleaded that Texas One "may have failed to mitigate the damages." [8]

On July 20, 2000, Fireman's Fund filed its first amended answer, denying "any coverage is available under its policy for plaintiff's alleged damages." [9] Fireman's

---

**1.** Docket no. 31.

**2.** Docket no. 1, exhibit B.

**3.** Docket no. 1, exhibit B, complaint at 4.

**4.** Docket no. 1.

**5.** The original answer was not included in the removal record; *see* docket no. 1

**6.** Docket no. 7 at 3.

**7.** Docket no. 7 at 3–6.

**8.** Docket no. 7 at 6.

**9.** Docket no. 14 at 2. Fireman's Fund's original answer is not included in the removal record; *see* docket no. 1.

Fund's first amended answer also raises twenty affirmative defenses including that "the Court lacks jurisdiction to the extent that there is presently no actual justiciable case or controversy;" Texas One's petition fails to state a claim upon which relief can be granted; Texas One failed "to satisfy all conditions precedent to invoke coverage;" and policy limitations and exclusions bar Texas One's claims [10]

Following an unsuccessful mediation,[11] on February 6, 2001 and after the expiration of the discovery and dispositive motion deadlines,[12] the Court entered a modified scheduling Order which allowed the parties to present dispositive motions after the filing of a stipulated record, as suggested by the parties.[13] On February 26, 2001, the parties filed stipulations of fact[14] and on April 20, 2001, defendants filed their motions for summary judgment.

General Star's first motion for summary judgment and brief in support—14–day continuous leakage exclusion and access costs,[15] states that General Star is "seeking a determination that it has no contractual duty under [the General Star policy] to pay a claim for foundation and cosmetic damage to the Oak Meadow Apartments allegedly caused by the accidental discharge of water from plumbing leaks." [16] General Star argues, in sum, that, while it disputes that plumbing leaks caused the claimed loss, "[n]evertheless, even if plumbing leaks did cause damage to the Oak Meadow Apartments, and even if the damage occurred during the General Star policy period, General Star asserts the

claimed damage is excluded from coverage pursuant to a 14–day continuous leakage exclusion contained in the policy." In addition, because there is no covered damage, General Star is not "liable for costs to access the plumbing or repair the leaks." [17]

On May 17, 2001, Texas One filed its response to General Star's first motion for summary judgment—14 day.[18] Texas One argues that "[t]he summary judgment evidence and the rules for construction of insurance contracts establish that the exclusions claimed by General Star are not applicable to this loss or that there are fact[ ] questions which preclude any finding of exclusion as a matter of law." [19]

In its second motion for summary judgment and brief in support—allocation, General Star states, in sum, that it is "seeking a determination that it is Texas One's burden to allocate damages attributable to a covered cause of loss and there is no evidence to support such allocation." [20] On May 17, 2001, Texas One filed its response to General Star's second motion for summary judgment—allocation, arguing "[t]he burden is not to demonstrate what percentage of movement was caused by each peril, but rather, to segregate the damages and isolate the damages related to the covered peril." [21] Texas One argues that it has accomplished such segregation and isolation.

Finally, Fireman's Fund's motion for summary judgment argues, in sum, that the Excess Policy it issued on the Oak Meadow Apartment does not provide cov-

10. Docket no. 14.

11. Docket no. 33.

12. Docket nos. 4, 20 and 30.

13. Docket no. 40.

14. Docket no. 41.

15. Docket no. 43.

16. Docket no 43 at 1.

17. Docket no. 43 at 1–2.

18. Docket no. 50.

19. Docket no. 50 at 1.

20. Docket no. 44 at 1.

21. Docket no. 44 at 2.

erage for Texas One's claimed losses because "the amount of damage per 'loss occurrence' does not exceed the limits of the underlying primary coverage maintained by General Star," and "there are at least two policy exclusions which would preclude coverage even if the 'loss occurrence' limit was exceeded." [22] On May 10, 2001, Texas One filed its response to Fireman's Fund's motion, arguing that "it is plaintiff's contention that the damage to the apartment complex was caused by failure of the plumbing system in the whole complex, and damage to each building cannot be treated as a separate occurrence for the purposes of applying the $1,000,000 per occurrence threshold of the insurance policy." [23] Texas One further argues that Fireman's Fund has not proffered any summary judgment evidence in support of its claim that Texas One's claims are barred by exclusions in the policy.

### III. STATEMENT OF FACTS

The following facts are stipulated to between the three parties, except where otherwise noted. [24]

Texas One was the owner of the Oak Meadow Apartments complex in San Antonio, Texas at all time relevant to this suit. [25] The Oak Meadow Apartments, built in 1974, consists of thirty numbered buildings and three office buildings, as well as other facilities. [26] Each building consists of at least four separate apartments. [27] General Star insured the Oak Meadow Apartments pursuant to a commercial property policy effective from October 21, 1995 to October 21, 1996. [28] Fireman's Fund also insured the Oak Meadow Apartments pursuant to a "commercial excess property policy," effective from October 21, 1995 to October 21, 1996. [29]

On or about October 1, 1996, Texas One hired Stabilizing Technology of Texas Construction, Inc. ("STTI") to perform an inspection of the Oak Meadow Apartments. The inspection revealed "what appeared to be movement of foundations and related above ground damage to some building structures." [30] STTI was retained by Texas One on or about October 7, 1996 to assist in handling the insurance claim. [31]

On or about October 18, 1996, Texas One submitted notice of a claim for damage to the Oak Meadow Apartments for "apparent movement of foundations and related above ground damage to the building structures to Fournier–Wallace without any date of loss given." [32] General Star received notice of the claim on December 16, 1996 and began an investigation "by having the plumbing systems test-

---

22. Docket no. 45 at 3.

23. Docket no. 46 at 1.

24. Docket no. 41.

25. Docket no. 41 at 1, ¶ 1. Texas One acquired the Oak Meadow Apartments complex on or about October 21, 1993, which was foreclosed upon, by agreement, on or about February 1, 2000. Docket no. 41 at 4, ¶ 31; docket no. 43, appendix at 3, ¶ 2.3.

26. Docket no. 41 at 1, ¶ 3.

27. Docket no. 41 at 4, ¶ 33.

28. Docket no. 41 at 1, ¶ 4.

29. Docket no. 41 at 1, ¶ 6.

30. Docket no. 41 at 2, ¶ 8.

31. Docket no. 41 at 2, ¶ 9. Texas One assigned an interest in the proceeds of the insurance to STTI. *Id.* STTI moved to intervene and filed a complaint in intervention on September 15, 2000 (docket no. 23), which was denied on November 13, 2000 (docket no. 32).

32. Docket no. 41 at 2, ¶ 10. "The Oak Meadow Apartments claim is one of five separate claims filed by the insured, Unity Enterprises, on the same day for alleged damage to five different apartment complexes caused by accidental discharge of water." *Id.* at ¶ 11.

ed, elevations taken on foundations, the interiors and exteriors of buildings inspected, soil data reviewed and conditions surrounding the buildings observed, such as vegetation growth and surface water damage." [33]

Texas One filed its proof of loss dated February 21, 1997 in which it stated that the date of loss and amount of loss were "unknown." [34] By August 1997, Fireman's Fund received notice of the claim, determined that the claim did not exceed its deductible, but asked that General Star or its adjustor, William J. Roeder, notify it if the claim exceeded Fireman's Fund's deductible.[35]

Plumbing tests revealed: "leaks in the plumbing systems of some of the buildings at the property ... [which] ... existed repeatedly and continuously for more than 14 days prior to discovery of the apparent damage;" "leaks in the sewer systems of 18 of the buildings;" and that "19 of the buildings have experienced plumbing leaks." [36] The parties have agreed that "[t]he leaks in the 19 buildings, according to plaintiff's expert's report, were in different areas of the individual buildings." [37]

The parties have stipulated that 19 buildings "have experienced foundation movement [and] have been damaged to different degrees" and "[t]he movement of the foundations at the Oak Meadow Apartments which are made the basis of the claim is the result of moisture changes in the soil beneath the foundations." [38] It is further stipulated by the parties that Tex-

as One "does not know when any of the leaks began" and that "[t]he plumbing leaks under any particular building foundation at the property only affected the foundation of that particular building and did not contribute to cause the movement of any other building foundation at the property nor did it cause any other plumbing leaks." [39] The cause of the damage to the Oak Meadow Apartments remains contested.[40]

General Star tendered $10,775 on or about October 6, 1997, "for access to repair the plumbing leaks at the property." [41] General Star's policy contains a per-occurrence deductive and General Star applied 16 deductibles in determining the amount of access costs paid.[42]

## IV. ISSUES PRESENTED

1. Whether General Star's first motion for summary judgment—14-day continuous leakage exclusion and access costs, should be granted.

2. Whether General Star's second motion for summary judgment—allocation, should be granted.

3. Whether Fireman's Fund's motion for summary judgment should be granted.

## V. STANDARDS

### A. Summary Judgment

The applicable standard in deciding a motion for summary judgment is set forth

33. Docket no. 41 at 2, ¶ 12.

34. Docket no. 41 at 2, ¶ 15.

35. Docket no. 41 at 2, ¶ 16.

36. Docket no. 41 at 3, ¶¶ 17, 18, 24 and 27.

37. Docket no. 41 at 4, ¶ 33.

38. Docket no. 41 at 3, ¶¶ 21 and 32.

39. Docket no. 41 at 3, ¶¶ 19 and 22.

40. Docket no. 43 at 1 ( "General Star disputes that plumbing leaks caused the damage to Oak Meadow Apartments.").

41. Docket no. 41 at 3, ¶ 28.

42. Docket no. 41 at 3, ¶ 29.

in FED. R. CIV. P. 56, which provides in pertinent part as follows:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[43]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact.[44] A fact is material if it might affect the outcome of the lawsuit under the governing law.[45] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[46]

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[47] The burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[48] All evidence and inferences must be drawn in favor of the party opposing summary judgment.[49] However, " '[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore, insufficient to defeat or support a motion for summary judgment." '[50] Thus, summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[51]

## B. Texas Law Regarding the Interpretation of an Insurance Policy

██ In Texas, the interpretation of an insurance policy is governed by the general rules of contract construction.[52] The Court is concerned primarily with giving attention and effect to the intentions of the contracting parties as expressed in the contract.[53] The focus of the Court's inquiry in determining the meaning of a contract is the objective intention of the par-

43. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

44. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

45. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994).

46. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995).

47. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

48. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

49. *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir.1993).

50. See *Dailey v. Johnson & Johnson Consumer Products Inc.*, 850 F.Supp. 549, 552 (N.D.Tex. 1994) (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992)).

51. *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1187 (5th Cir.1991).

52. *Grain Dealers Mutual Insurance Company v. McKee*, 943 S.W.2d 455, 458 (Tex.1997); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994).

53. *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980); *Sidelnik v. American States Ins. Co.*, 914 S.W.2d 689, 691 (Tex.App.-Austin 1996, writ denied).

ties as evidenced in the contract itself.[54] The question of whether a contract is ambiguous is a question of law that is made by the Court.[55] If the Court determines the contract is unambiguous, the Court, not a jury, is to interpret the legal meaning of the contract's provisions.[56] If the Court deems a contract to be unambiguous, there plainly is no fact issue regarding the contracting parties' intent that need be considered by the jury.[57] But, if the contract is susceptible to two or more reasonable interpretations, the contract is ambiguous.[58] If the Court determines the contract is ambiguous and conflicting parol evidence is considered to resolve the ambiguity, the question of the true intent of the parties becomes a fact issue for the jury.[59]

▓▓▓▓ Under basic contract construction, the preferred interpretation is one that provides meaning to every provision and does not read any term out of the contract.[60] An endorsement cannot be read apart from the main policy, and the added provisions will supersede the previous policy terms to the extent they are truly in conflict.[61] Although it is preferable to construe a policy to not create surplusage or leave portions of the policy useless or inexplicable, surplusage alone does not create an ambiguity.[62] Parol evidence of the parties' intent is not admissible to create an ambiguity, but the contract may be read in the light of the surrounding circumstances to determine whether an ambiguity exists.[63]

▓▓▓▓ When a contract can be given a definite or certain legal meaning, it is unambiguous.[64] But if, after applying the rules of construction, the contract is subject to more than one reasonable interpretation, it is ambiguous and the interpretation that most favors coverage will be adopted.[65] "Whether a contract is ambigu-

---

**54.** *Fuller v. Phillips Petroleum Co.*, 872 F.2d 655, 657 (5th Cir.1989).

**55.** *R & P Enterprises*, 596 S.W.2d at 518.

**56.** *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968); *Wahlenmaier v. American Quasar Petroleum Co.*, 517 S.W.2d 390, 393 (Tex.Civ.App.—El Paso 1974, writ ref. n.r.e.).

**57.** *Triland Inv. Group v. Warren*, 742 S.W.2d 18, 22 (Tex.App.-Dallas 1987), *rev'd on other grounds*, 779 S.W.2d 808 (Tex.1989).

**58.** *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (citation omitted).

**59.** *Trinity Universal Ins. Co. v. Ponsford Brothers*, 423 S.W.2d 571, 575 (Tex.1968); *Amistad, Inc. v. Frates Communities, Inc.*, 611 S.W.2d 121, 127 (Tex.Civ.App.-Waco 1980, writ ref. n.r.e.).

**60.** *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620–21 (1954) (Even where different parts of the instrument appear to be contradictory and inconsistent with each other, the court will, of possible, harmonize the parts and construe the instrument in such way that all parts may stand and will not strike down

any portion unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part); *Mesa Operating Co. v. California Union Ins. Co.*, 986 S.W.2d 749, 753 (Tex.App.-Dallas 1999, pet. denied); *Eagle Life Ins. Co. v. G.I.C. Ins. Co.*, 697 S.W.2d 648, 651 (Tex. App–San Antonio 1985, writ ref'd n.r.e.).

**61.** *Mesa Operating Co.*, 986 S.W.2d at 754; *see Westchester Fire Ins. v. Heddington Ins. Ltd.*, 883 F.Supp. 158, 165 (S.D.Tex.1995), *aff'd*, 84 F.3d 432 (5th Cir.1996).

**62.** *Grain Dealers Mutual Insurance Company v. McKee*, 943 S.W.2d at 458.

**63.** *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995).

**64.** *Grain Dealers Mutual Insurance Company v. McKee*, 943 S.W.2d at 458; *CBI Indus.*, 907 S.W.2d at 520.

**65.** *Grain Dealers Mutual Insurance Company v. McKee*, 943 S.W.2d at 458 (*citing Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex.1984)).

ous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." [66]

## VI. ARGUMENTS AND CONCLUSIONS OF LAW

### A. General Star's First Motion for Summary Judgment—14-day Continuous Leakage Exclusion and Access Costs

#### 1. The 14-day Continuous Leakage Exclusion

##### a. summary of the arguments

In it first motion for summary judgment—14-day continuous leakage exclusion and access costs, General Star argues that it has no contractual duty under its commercial property policy to "pay a claim for . . . damage to the Oak Meadow Apartments allegedly caused by the accidental discharge of water from plumbing leaks." [67] General Star disputes that plumbing leaks caused the damage to the Oak Meadow Apartments, but argues that "even if plumbing leaks did cause damage to the Oak Meadow Apartments and even if the damage occurred during the General Star policy period, . . . the claimed damage is excluded from coverage pursuant to a 14-day continuous leakage exclusion contained in the policy." [68] The 14-day continuous leakage exclusion in General Star's policy with Texas One provides that Gen-

eral Star "will not pay for loss or damage caused by or resulting from . . . continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more." [69] Because it is undisputed that the leaks in the insured property continued for more than 14 days, General Star argues that it is entitled to judgment as a matter of law on this issue. [70]

Texas One opposes summary judgment based on the 14-day clause, arguing that "[t]he summary judgment evidence and the rules for construction of insurance contracts establish that the exclusions claimed by General Star are not applicable to this loss or that there are fact[ ] questions which preclude any finding of exclusion as a matter of law." [71] More specifically, Texas One argues that "[w]hile it has been stipulated that the underground plumbing leaks existed for more than 14 days before the foundation loss was discovered there is not any evidence of how long the leaks existed before the foundation damage occurred." [72] Because there is "no evidence to establish that the foundation movement was caused by leaks continuing to occur for more than 14 days" and because "the foundation movement could have occurred within the first 14 days of the leaks with the leaks simply continuing thereafter," Texas One argues that General Star has not satisfied its "burden to prove that the foundation movement occurred after the

---

66. *Grain Dealers Mutual Insurance Company v. McKee*, 943 S.W.2d at 458; *CBI Indus.*, 907 S.W.2d at 520.

67. Docket no 43 at 1.

68. Docket no. 43 at 1–2.

69. Docket no. 43 at 2; docket no. 41, exhibit 1.

70. Docket no. 43 at 2–6.

71. Docket no. 50 at 1.

72. Docket no. 50 at 3. Section III of Texas One's response (docket no. 50 at 2) is captioned: "The 14-day provision does not defeat coverage because Unity is provided coverage under Section B, 2(d) of 'Causes of Loss, Special Form.'" Texas One's response, however, does not present argument in support of the application of section B, 2(d) of "Causes of Loss—Special Form" and, therefore, this report does not further address the argument.

leaks had been leaking for at least 14 days continuously."

In reply, General Star argues that the 14–day exclusion does not "require the insurer to undertake the Promethean task of segregating which damages occurred before 14 days and which occurred after 14 days." [73] Rather, "[p]lain and simple—if there has been a leak occurring for 14 days or more and damage is allegedly caused by the leak, there is no coverage." [74] General Star further argues "[s]imple logic and common sense also dictates the extensive damage claimed at the apartment complex (an estimated $8.5 million to repair and remediate) could not have been caused by plumbing leaks of the size found in this case in less than 14 days." [75] Citing the engineering report of Eugene Dabney, included within Texas One's summary judgment evidence,[76] General Star argues that "plaintiff's own expert . . . admits in his report that the damage at issue was most likely caused more than 130 or 195 days after the leaks started" and, moreover, that the leaks likely were caused by "a defect in the materials or workmanship at the time of installation," [77] raising the possibility that leaks had been occurring since the 1974 construction of the apartment complex. Because Texas One has stipulated that the leaks existed continuously for more than 14 days before damage was discovered, General Star argues that Texas One has admitted that the loss manifested itself after the leaks had lasted more than 14 days and the 14–day exclusion clearly applies to bar the loss.

**b. analysis**

 The policy provision in question, which appears in the causes of loss—special form [CP 10 30 10 91], provides, in part:

**B. EXCLUSIONS**

\*　　\*　　\*　　\*　　\*　　\*

2. We will not pay for loss or damage caused directly or indirectly by any of the following:

\*　　\*　　\*　　\*　　\*　　\*

f. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.[78]

It is undisputed that: all plumbing leaks at the Oak Meadow Apartments "existed continuously and repeatedly for more than 14 days prior to the discovery of the apparent damage," Texas One "does not know when any of the leaks began," and movement of some of the foundations was the result of moisture changes in the soil beneath the foundations.[79] Texas One argues that General Star has the "burden to establish that the damage, i.e., foundation movement itself, was caused by continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more" and, more precisely, that "foundation movement occurred after the leaks had been leaking for at least 14 days continuously." [80] Texas One argues that General Star has not sustained its burden because there is "not any evidence" of how long the leaks existed before the foundation damage occurred (as opposed to when the foundation damage was discovered), there is "no evidence" that foundation movement was caused by leaks continuing to occur for more than 14 days, and the foundation

---

73. Docket no. 55 at 2–3.

74. Docket no. 55 at 3.

75. Docket no. 55 at 3.

76. Docket no. 52, exhibit B at 10.

77. Docket no. 55 at 3 and n. 3.

78. Docket no. 41, exhibit 1.

79. Docket no. 41 at 3, ¶¶ 17, 18 and 21.

80. Docket no. 50 at 3.

movement "could have occurred" within the first 14 days of the leaks.[81]

As an initial matter, the 14–day clause at issue is not ambiguous. Texas One has not stated how this provision means anything other than what it states: damage caused (directly or indirectly) from leakage of water occurring 14 days or more is excluded. Cases construing exclusionary clauses similar to the one at issue have held that the clause is not ambiguous.[82] Texas One has not directly asserted that the 14–day clause or any other clause of its policy of insurance at issue is ambiguous.[83] A mere dispute between the parties as to whether or not a conclusion applies does not make the provision ambiguous.[84] Without a demonstration that the 14–day clause is ambiguous, the rules of policy construction relied upon in Texas One's opposition do not apply.[85]

General Star's motion for summary judgment argues, in sum, that there is no genuine issue of material fact that the damages at issue—assuming they were caused by plumbing leaks—were caused by leaks that continued for more than 14 days. The summary judgment burden then shifted to Texas One to demonstrate, through competent summary judgment evidence, that there is a genuine issue of fact regarding causation. Texas One's opposition to summary judgment, however, argues among other things, that there is "not any evidence of how long the leaks existed before the foundation damage occurred."[86] If there is "not any evidence" on when the damage occurred, a reasonable jury could not return a verdict for Texas One since it would be merely conclusory and speculative to conclude, as Texas One argues, that the leaks in question caused foundation damage "within the first 14 days of the leaks with the leaks simply continuing thereafter."[87] Although Texas One tenders the complete text of Dabney's report and refers to the report in its statement of facts in support of the general proposition that moisture causes the expansion of soils which deforms foundations, Texas One cites no specific portion of that report to show that there is "some evidence" any leak could have caused damage within the first 14 days. Rather, the Dabney report includes his opinion that "had there not been any plumbing leaks, there would not have been any need to remediate the foundations due to the more unfirm moisture changes around the perimeters attributable to climatic conditions"[88] but also his opinion that "it is unlikely" that the damages "were caused 130 or even 195 days after the leaks started."[89] Further, General Star's expert—although he did not

81. *Id.*

82. *General Accident Ins. Co. v. Unity/Waterford–Fair Oaks, Ltd.*, SA–97–CA–624–WWJ, memorandum decision, docket no. 112 (W.D.Tex. Dec. 14, 2000). *See e.g., American Concept Ins. Co. v. Jones*, 935 F.Supp. 1220, 1226 (D.Utah, 1996) ("This policy language is clear ...."); *Hall v. American Indemnity Group*, 648 So.2d 556, 558 (Ala.1994) ("... nor do we find that the provisions create an ambiguity."); *Finn v. Continental Ins. Co.*, 218 Cal.App.3d 69, 72, 267 Cal.Rptr. 22 (Cal. App.1990) ("The exclusion at issue plainly and unambiguously denies coverage for water leaking, over a long period, from the plumbing system.").

83. *See generally* docket no. 50.

84. *National Union Fire Ins. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex.1995).

85. Docket no. 50 at 2; *Canutillo Indep. School Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996); *National Union Fire Ins. v. CBI Indus.*, 907 S.W.2d at 520.

86. Docket no. 50 at 3.

87. *Id.*

88. Docket no. 52, exhibit 1 at 1, ¶ 4.

89. Docket no. 52, exhibit 1, B at 10.

conclude that the claimed damage was caused by plumbing leaks—is of the opinion that water leaks would have had to have existed for well over 14 days in order to have caused the extensive damage claimed at the apartment complex (an estimated $8.5 million to repair and remediate).[90]

Although Texas One cites no cases in its opposition pleading and although General Star acknowledges that there is no reported opinion from a Texas court addressing the 14–day exclusion, several unpublished decisions from state and federal courts [91] have applied the exclusion. Of note to this Court is the decision of Senior Judge William Wayne Justice in *General Accident Insurance Co. v. Unity/Waterford–Fair*

*Oaks, Ltd. v. General Star Indemnity Co.* in which the Court construed an identically worded 14–day exclusion.[92] The evidence in *Unity/Waterford–Fair Oaks, Ltd.* was similar to this case, since Unity "during the month of October 1996 . . . discovered that the apartments were becoming damaged due to foundation movement," [93] but the issue presented in summary judgment motions in *Unity/Waterford–Fair Oaks, Ltd.* was whether another clause in the policy granted coverage and took precedence over the 14–day exclusion. Interpreting the 14–day provision, the Court held that "in all cases that damage occurs from the leakage or seepage of water over a period of 14 days or more, the damage is not covered." [94] As noted, Texas One and

---

**90.** Docket no. 55, appendix, exhibit L. *See also* docket no. 56, exhibit A (affidavit of Jerry Mercer) ("Although I do not believe the plumbing leaks at issue caused the damage claimed at the Oak Meadow Apartments, in order for a water leak to cause the damage claimed, any leak would have had to existed for a period well over 14 days to cause enough swell of the soil to exert enough upward pressure to lift or heave the foundation to the point where it became overstressed and damaged.").

**91.** Docket no. 43 at 3–7. General Star has cited the unpublished decisions because of their similarity to the question presented. *See, e.g., Farmers Mut. Protective Ass'n of Texas v. Zwernemann,* 1996 WL 743707 at *4, no publication, (Tex.App.-Houston [14th Dist.], 1996, writ denied) (based on an engineer's report that stated damage had occurred over a period of one-and-one-half to three years, foundation damage was excluded from coverage as "continuous or repeated seepage or leakage over a period of weeks, months or years"); *Bavarian Manor Apts., Ltd. v. Interstate Fire & Casualty Co. et. al.,* No. 99–03748 (345th Dist. Ct., Travis County, Tex., Feb. 8, 2001) ("Interstate has established without a doubt, a less-than-fourteen-day leak would not have caused this loss; only a leak far longer than fourteen days would have cause this loss.").

General Star has also cited the undersigned's recent report and recommendation to the Honorable H.F. Garcia in *General Star*

*Indemnity Co. v. Sherry Brooke Revocable Trust, et. al.,* SA–99–CA–1105, docket no. 149, 2001 WL 34063890 (W.D.Tex, March 16, 2001). That report, not binding authority and of no precedential value, is pending before the District Court. Nevertheless, the recommendation in *Sherry Brooke Revocable Trust* is not inconsistent with the present recommendation.

**92.** *Unity/Waterford–Fair Oaks, Ltd.,* SA–97–CA–624, memorandum decision, docket no. 112 (W.D.Tex, Dec. 14, 2000).

**93.** *See* note 32, above. *See Unity/Waterford–Fair Oaks, Ltd.,* SA–97–CA–624, memorandum decision, docket no. 112 at 2 ("According to undisputed expert testimony, these leaks had been taking place for at least one month, and more likely for at least six months, *before they began to manifest themselves* into damage to the apartment buildings") (emphasis added)

**94.** *Unity/Waterford–Fair Oaks, Ltd.,* SA–97–CA–624, docket no. 112 at 6. *See also Mutual Redevelopment Houses, Inc. v. Greater New York Mutual Ins. Co.,* 204 A.D.2d 145, 611 N.Y.S.2d 550, 552 (N.Y.App.Div.1994) ("plaintiff concedes that leakage of water occurred over a period greatly exceeding 14 days"); *Howard v. Commercial Union Ins. Co.,* 441 So.2d 466, 468 (La.App.1983) (damage directly attributable to leakage from water pipe beneath foundation that was "con-

defendants have stipulated that the leaks at issue existed continuously for a period exceeding 14 days "prior to the discovery of the alleged damage." [95] Because, as in *Unity/Waterford–Fair Oaks, Ltd.*, Texas One has presented no evidence that the damages first manifested themselves in less than 14 days, there is no genuine issue of material fact that the alleged damages are excluded by the 14–day exclusion.

For the reasons stated above, it is the recommendation of this Court that General Star's motion for summary judgment—14–day continuous leak exception be granted.

### 2. Access Costs

█ General Star argues that it is not liable for costs to access the plumbing or repair the leaks at the Oak Meadow Apartments.[96] Because "[t]he policy clearly requires a covered loss before any access costs are payable," and because no covered loss has occurred by virtue of the 14–day exclusion, General Star argues that it in not liable to pay access costs.[97] General Star also argues that an exclusion in the policy "applies to preclude coverage for the cost of repairing or replacing the underground pipes themselves." [98]

Texas One argues it is entitled to be paid compensation for access to repair the plumbing under the portion of the policy captioned "Additional Coverage Extensions, part 2," which provides compensation for the costs to "tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes." [99] Texas One argues that "it is reasonable to construe the policy ... to provide access to repair the plumbing leaks." [100]

The "Causes of Loss—Special Form" of the General Star policy with Texas One provides, in part:

### E. ADDITIONAL COVERAGE EXTENSIONS

\* \* \* \* \* \*

#### 2. Water Damage, Other Liquids, Powder or Molten Material Damage.

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.[101]

Although Texas One and General Star dispute the coverage provided by the policy in general and the 14–day exclusion in specific, "Texas One seeks coverage only for the cost for access the pipes and not to repair the plumbing system."[102] Texas One argues that "Additional Coverage Extensions, part 2" provides coverage for access costs any time there is accidental discharge of water from a plumbing system. With respect to reimbursement for costs to access and repair the leaks, the parties appear to agree that the question turns on

tinuous" and "uncorrected for an extended period of time, several months" was excluded as "continuous or repeated seepage or leakage over a period of weeks, months or years.")

95. Docket no. 14 at 2, ¶ 18.

96. Docket no. 43 at 1–2.

97. Docket no. 43 at 7.

98. Docket no. 43 at 9.

99. Docket no 41, Exhibit 1.

100. Docket no. 50 at 6.

101. Docket no. 43, appendix, tab A–1.

102. Docket no. 50 at 3 and 6.

whether there is a "covered loss or damage."

Because the policy clearly requires a covered loss before any access costs for repair are payable and because the damages caused by the long-term plumbing leaks in this case are not covered through an application of the 14–day exclusion, there is no coverage for access costs to remediate the plumbing deficiencies under "Additional Coverage Extensions, part 2." [103]

In sum, for the reasons stated above, it is recommended that General Star's motion for summary judgment—access costs be **granted.**

## B. General Star's Second Motion for Summary Judgment—Allocation

General Star's second motion for summary judgment—allocation disputes that plumbing leaks caused the damage to the Oak Meadow Apartments and argues that Texas One cannot allocate the damage attributable to the covered perils, such as plumbing leaks not barred by the 14–day exclusion, and non-covered perils, such as wear and tear; decay, deterioration, hidden or latent defects; and settling, crack-

ing, shrinking or expansion. [104] General Star argues that it is Texas One's burden to present evidence to allocate damages attributable to covered plumbing leaks as opposed to non-covered perils, but that "Texas One has presented no evidence upon which a jury can allocate the damage attributable to a covered water leak. Its own expert, Eugene Dabney, has admitted that he is not able to make an allocation of damages." [105]

Texas One denies that losses to the foundations caused by climatic conditions and plumbing leaks are denied under the policy [106] and argues that "[t]he burden is not to demonstrate what percentage of movement was caused by each peril, but rather, to segregate the damages and isolate the damages related to the covered peril." [107] Texas One argues that Dabney supports the required allocation because he concludes that the interior mounds are solely a result of the discharge of water and that, had there not been plumbing leaks, there would be no need to remediate the foundations due to the movement caused by climatic changes. [108] Texas One argues that Dabney "isolates the damages

---

**103.** Texas One has also argued that General Star's conduct in paying some access costs, less deductibles, should be considered by the Court in construing the contract terms. Docket no. 50 at 6. Because the Court finds that the 14–day exclusion, the access costs provision, and related provisions at issue are unambiguous, it is inappropriate to consider General Star's course of conduct. *See Unity/Waterford–Fair Oaks, Ltd.,* SA–97–CA–624, docket no. 112 at 7–8.

**104.** Docket no. 44 at 2–4.

**105.** Docket no. 44 at 5. General Star notes in a footnote, docket no. 44 at 5 n. 2, that it "does not concede that Dabney, or his report satisfies the requirements of *Daubert* ...." General Star presents no specific challenge to Dabney's report or testimony through his affidavit nor has General Star presented an affi-

davit challenging Dabney's conclusions; therefore, this report undertakes no detailed analysis of the challenge. Based upon the information included in the summary judgment record concerning Dabney's background, experience and qualifications and the description of his examination and method of analyzing the subject property, and in recognition of the Court's gate-keeping responsibilities, the Court concludes that he appears to be qualified to render the opinions he has made, that his opinions are supported by an adequate description of methodology and that the opinions appear to be reliable and admissible for purposes of summary judgment.

**106.** Docket no. 51 at 2.

**107.** *Id.*

**108.** *Id.*

to those necessary to remediate damages caused only by the leaks." [109]

It is well settled that Texas recognizes the doctrine of concurrent causes which provides that when covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril.[110] Under Texas Law, it is the insured's burden to "present some evidence upon which the jury can allocate the damage attributable to the covered peril." [111]

In *Wallis*, a Fourth Court of Appeals case addressing a homeowner's policy, the insured filed a claim under their homeowner's policy for foundation damage that was suspected to be caused by a plumbing leak.[112] Through its investigation, the insurer determined that the foundation damage was caused by several excluded perils under the insured's policy, including "settlement, poor surface drainage, the topography of the lot, and surrounding vegetation." [113] Plumbing leaks, which were covered perils, were also detected; however, the insurer concluded that the leaks were negligible and had not caused or contributed to the complained-of damage.[114] The insured argued that "the issue of allocation [was] immaterial because the evidence introduced at trial was that the entire house needed to be repaired." [115] The Court rejected this claim holding:

Because an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. Moreover, it follows that an insured's failure to carry the burden of proof on allocation could not be immaterial because it is central to the claim for coverage.[116]

In the present case, Texas One's expert has concluded:

The foundation, in all probability has experienced movement from both sub-foundation plumbing leaks and climatic conditions (wet and dry periods). It is impossible to make a quantitative determination of the percentage of each type of movement and to do so would require the engineer to make a guess.[117]

But, Dabney also has concluded that "the mounds in the interior portion of the foundations are *solely* the result of the discharge of water from the breaks or cracks in the plumbing pipes beneath the foundations," [118] In this regard, Texas One appears to have met its burden under Texas law to present some evidence that some severable portion of its damages, that is, the mounds in the interior portion of the noted foundations are solely the result of plumbing leaks. The other damages, however, are the result of concurrent causes, as reflected by Dabney's report and testi-

109. *Id.*

110. *Wallis v. United Services Automobile Association*, 2 S.W.3d 300, 302–3 (Tex.App.-San Antonio, 1999) (*citing Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex.1971); *Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex.1965); *Warrilow v. Norrell*, 791 S.W.2d 515, 527 (Tex.App.Corpus Christi 1989, *writ denied*)).

111. *Wallis*, 2 S.W.3d at 303.

112. *Id.* at 301.

113. *Id.* at 301–02.

114. *Id.* at 302.

115. *Id.* at 303.

116. *Id.* (citations omitted).

117. Docket no. 52, exhibit 1, B at 14.

118. Docket no. 52, exhibit 1 at 1, ¶ 3 (emphasis added).

mony, and Texas One has not met its burden to segregate damages between those damages caused by plumbing leaks and those damages caused by non-covered seasonal climatic changes and other non-covered causes. Nevertheless, as noted in the discussion of the 14–day exclusion, because the mounds in the interior portion of the noted foundations, even if caused solely by plumbing leaks, are not the result of a covered loss, the damages are not compensable.

For the reasons stated above, it is recommended that General Star's motion for summary judgment—allocation be **denied** with respect to mounds in the interior portion of the foundations but **granted** in all other respects.

## C. Fireman's Fund's Motion for Summary Judgment

### 1. The Threshold for Coverage Under The Fireman's Fund's Excess Policy

Fireman's Fund's motion for summary judgment argues, in sum, that its Excess Policy covering the Oak Meadows Apartments does not provide coverage for the damages claimed by Texas One because the amount of damages per "loss occurrence" does not exceed the limits of General Star's underlying policy ($1 million per occurrence) and the threshold for coverage under the Excess Policy; and, as further discussed in the sub-section below, because two policy exclusions preclude coverage even if the loss occurrence limit is exceeded.[119] Texas One opposes summary judgment, arguing that "the damage to the apartment complex was caused by a failure of the plumbing system in the whole com-

plex, and damage to each building cannot be treated as a separate occurrence for the purposes of applying the $1,000,000 per occurrence threshold of the insurance policy."[120] Texas One contends that "in this case there is one location on which there are located several buildings"[121] and Fireman's Fund insures the entire apartment complex, not individual buildings; and "[t]he damage to the foundations of the Apartment complex was due to one cause—leaks from the plumbing system;"[122] therefore, all damages to all buildings should be considered as one "occurrence" under the Excess Policy.

Fireman's Fund's Excess Policy includes a provision which appears in the portion of the policy captioned "excess of loss agreement of indemnity broad form, section I, limits of liability, section A [BF (7–95)]," which provides, in part:

> This Company shall be liable in respect of each and every loss occurrence, irrespective of the number and kinds of risks involved, for 100% of the ultimate net loss excess over and above $1,000,000 ultimate net loss to the Insured in each and every loss occurrence.[123]

The policy further provides, in part, in the "loss occurrence limit of liability endorsement" [OLL(3–94)]:

> The term loss occurrence means the total loss by perils insured against arising out of a *single event*.[124]

It is undisputed that the total damage claimed as to any one building does not exceed the $1 million threshold for the Excess Policy.[125]

---

**119.** Docket no. 45 at 3.

**120.** Docket no. 46 at 1.

**121.** Docket no. 46 at 3.

**122.** Docket no. 46 at 3.

**123.** Docket no. 45, exhibit B.

**124.** Docket no. 45, exhibit B (emphasis added).

**125.** Docket no., exhibit C.

Texas One's argument that the claimed loss is a single event or occurrence because the damage befell the complex as a whole is untenable in light of the stipulated facts. Although Texas One may be correct that the Fireman's Fund Excess Policy was generally applicable to the complex as a whole, Texas cases establish that the relevant question "in interpreting 'occurrence' is on the events *that cause* the injuries and give rise to the insured's liability, rather than on the number of injurious effects."[126]

In this case, it is stipulated that the movement of the foundations is "the result of moisture changes in the soil beneath the foundations."[127] It is further stipulated that Texas One does not know when any of the leaks began and that "[t]he plumbing leaks under any particular building foundation at the property only affected the foundation of that particular building and did not contribute to cause the movement of the foundation of any other building foundation at the property nor did it cause any other plumbing leaks."[128] These stipulations preclude a finding that a single occurrence caused the multiple losses to different foundations at the Oak Meadow Apartments. There is no evidence in this case that the moisture changes are attributable to one, distinct and identifiable cause, but rather the parties have stipulated that there are a number of discrete events that are not causally connected.[129]

For the reasons stated above, it is recommended that Fireman's Fund's motion for summary judgment be **granted** with regard to its argument that Texas One's claim does not reach the threshold for coverage under the Excess Policy.

### 2. Two Exclusions in the Fireman's Fund's Excess Policy

Fireman's Fund alternatively argues that regardless of whether the losses claimed by Texas One reach the policy threshold, Texas One's claim is barred by two exclusions in the policy. The Fireman's Fund's Excess Policy provides, in part, in the portion of the policy captioned "excess of loss agreement of indemnity broad form, section V, perils excluded, section B" [BF(7–95)]:

> B. This Agreement does not insure against loss or damage caused by, re-

**126.** *Ran–Nan Inc. v. General Acc. Ins. Co. of America*, 252 F.3d 738, 739–40 (5th Cir.2001) (*citing H.E. Butt Grocery Co. v. National Union Fire Insurance Co.*, 150 F.3d 526, 530 (5th Cir.1998) (applying Texas law)) (emphasis added). *See also Goose Creek Consol. I.S.D. v. Continental Cas. Co.*, 658 S.W.2d 338, 340 (Tex.App.-Houston [1st Dist.], 1983, no writ) ("The majority of courts have adopted a 'cause' analysis rather than "effect." ... The courts have first examined the insurance policy to determine the meaning of 'occurrence,' and have then examined the cause of the particular events involved, rather than the effect of the event.") (citations omitted). *Texas Dept. of Mental Health and Mental Retardation v. Petty*, 817 S.W.2d 707, 720 (Tex.App.-Austin, 1991), *aff'd*, 848 S.W.2d 680 (Tex. 1992, reh.overruled), cited by Texas One (docket no. 46 at 2), does not compel a different result. Although *Petty* concluded that

"the negligent acts and omissions of Department employees are not separable according to which caused a particular part of Ms. Petty's total injury and no evidence purported to so distinguish her injuries" for purposes of § 101.023 of the Texas Tort Claims Act, *Petty* did not depart from a "causation" analysis and, in that respect, is consistent with *Goose Creek*.

**127.** Docket no. 41 at 3, ¶ 21.

**128.** Docket no. 41 at 3, ¶¶ 19 and 22.

**129.** *See* docket no. 48, exhibit 1 (Dabney affidavit) and B (Dabney report) (the noted plumbing system failures could be attributable to breaks in the pipes and/or defective material or workmanship at the time of installation).

sulting from, contributed to or aggravated by any of the following:

\* \* \* \* \* \*

3. Wear and tear, gradual deterioration, inherent vice, latent defect, moths, vermin or insects.

\* \* \* \* \* \*

6. b. Rust or corrosion, change in color, texture, finish or flavor.[130]

Fireman's Fund argues, "[i]t would certainly appear that the leaks in the plumbing were caused either by the corrosive action of an outside agency acting on the pipes (the Rust or Corrosion Exclusion) or by some deficiency in the condition of the pipes themselves (the Inherent Vice Exclusion)."[131] Texas One responds arguing that Fireman's Fund has presented no evidence of rust and corrosion or inherent vice in the PVC pipe in question.[132]

The Court agrees that Fireman's Fund has presented no evidence that the plumbing leaks were caused by rust and corrosion in the PVC pipes. The Court also concludes that Fireman's Fund has not sustained its summary judgment burden of establishing that there is no genuine issue of material fact that the plumbing leaks were caused by "wear and tear, gradual deterioration, inherent vice or latent defects." Although it is true that Dabney concludes that there were cracks or breaks in the PVC pipes and/or that the PVC pipes may have been improperly installed or defective at installation, as discussed above, such conclusory allegations are not sufficient to support entry of judgment as a matter of law.

Therefore, it is recommended that Fireman's Fund's motion for summary judgment be **denied** with regard to the argument that the two noted exclusions to the Excess Policy bar Texas One's claim.

## VII. RECOMMENDATION

It is recommended that: General Star's first motion for summary judgment—14 day continuous leakage exclusion and access costs [133] be **granted**; General Star's second motion for summary judgment—allocation [134] be **denied** with respect to mounds in the interior portion of the foundations but **granted** in all other respects; and Fireman's Fund's motion for summary judgment [135] be **granted** with regard to its claim that Texas One's claim does not reach the threshold for coverage under the Excess Policy and **denied** with regard to the claim that two exclusions to the Excess Policy bar Texas One's claim. Any relief not expressly granted should be **denied**.

## VIII. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on each and every party either (1) by certified mail, return receipt requested, or (2) by facsimile if authorization to do so is on file with the Clerk. According to 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this report must serve and file written objections to the Report and Recommendation within 10 days after being served with a copy unless this time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections;

---

130. Docket no. 45, exhibit B.

131. Docket no. 45 at 11.

132. Docket no. 46 at 4.

133. Docket no. 43.

134. Docket no. 44.

135. Docket no. 45.

the district court need not consider frivolous, conclusive or general objections. **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the District Court.[136] Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[137]

Aug. 3, 2001.

---

**136.** *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

**137.** *Douglass v. United Services Automobile Ass'n.,* 79 F.3d 1415, 1428 (5th Cir.1996).