**EAGLE LIFE INSURANCE COMPANY, Appellant,**

v.

**G.I.C. INSRUANCE COMPANY, Appellee.**

No. 04–83–00605–CV.

Court of Appeals of Texas, San Antonio.

July 10, 1985.

Rehearing Denied Sept. 27, 1985.

Charles M. Jefferson, San Antonio, for appellant.

Kim I. Manning, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL, and DIAL, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment rendered in favor of the plaintiff below, G.I.C. Insurance Company, and against the defendant below, Eagle Life Insurance Company, in the amount of $18,619.95, plus pre-judgment interest at a rate of six percent per year from March 16, 1979 through the date of judgment (November 1, 1980), postjudgment interest at a rate of ten percent per annum and reasonable attorney's fees of $5,000.00.

The trial below was held before the court without a jury. The case was decided on a record which consisted of an agreed statement of facts. Based upon these undisputed facts, the trial court found that G.I.C. Insurance Company had properly paid off the policy written on the life of James D. Hampton and accordingly, was entitled to reimbursement from Eagle Life Insurance Company. From that judgment appellant presents two points of error. We reverse.

In point of error number one the appellant argues the trial court erred in its implied conclusion of law that the insurance policy on the life of James D. Hampton is ambiguous. In point of error number two, the appellant alleges the trial court erred in its implied conclusion of law that the insurance policy on the life of James D. Hampton was in effect at the time of his death.

The agreed undisputed facts are as follows. The plaintiff, G.I.C. Insurance Company and the defendant, Eagle Life, entered into a reinsurance treaty. Under the terms of this treaty, G.I.C. Insurance wrote credit life insurance policies which were reinsured with Eagle Life. Eagle was given most of the insurance premiums and in turn agreed to reimburse G.I.C. "for all losses arising under the specific terms and provisions of the policies and certificates of insurance reinsured hereunder." Under the terms of the reinsurance treaty, G.I.C. retained the first $5,000.00 of each policy written, so Eagle Life's obligation to reimburse G.I.C. Insurance was limited to amounts above $5,000.00 which G.I.C. Insurance properly paid out on valid claims.

On January 4, 1978, James D. Hampton and his wife, Margaret, executed a promissory note for $23,629.38 to the First State Bank of Shallowater. This note was due

on December 31, 1978. In connection with said promissory note, James Hampton purchased a level term credit life insurance policy from G.I.C. Insurance in the amount of $23,629.38. The premium was payable on a single premium advanced payment basis. This policy was for a term commencing on January 4, 1978, and ending twelve months thereafter. The policy, however, also contained the following termination clause:

TERMINATION: The insurance on any Debtor shall automatically terminate on the earliest of the following dates, but without prejudice to any Claim originating prior to such termination.

1. The scheduled maturity date of the indebtedness for which insured.

2. The date the Insured Debtor's indebtedness to the Creditor is discharged by prepayment, renewal, refinancing, or transfer to another Debtor.

3. The date the debtor [sic] cancels the insurance by written request.

The debtor's indebtedness was never discharged. Nor did the debtor ever cancel the insurance by written request. The "scheduled maturity date of the indebtedness for which insured" was December 31, 1978, the day on which the promissory note was due. James Hampton died on January 3, 1979. This was after the scheduled maturity date of the indebtedness which was being insured. His death, however, took place less than twelve months after he purchased the credit life insurance policy.

G.I.C. Insurance paid the claim in the full amount of $23,629.38 to the policy's beneficiary, the First State Bank of Shallowater. Eagle Life, however, refused to reimburse G.I.C. on the ground that the claim was not properly payable under the terms of the policy.

Under point of error number one, Eagle argues that there can be no doubt that if the termination provision in the policy is considered by itself the credit life insurance policy in question expired on December 31, 1978. The termination clause provided, inter alia, that the insurance would terminate on the scheduled maturity date of the indebtedness for which insured. The indebtedness which was insured by the credit life insurance policy was a promissory note date January 4, 1978, from Hampton and his wife to the First State Bank of Shallowater. The note plainly provides the maturity date of the debt is December 31, 1978. Since the insurance policy provides that the insurance on the debtor automatically terminates on the scheduled maturity date, the insurance automatically terminated on December 31, 1978. G.I.C., however, contends that the credit life insurance policy on the life of Hampton is ambiguous, because of another provision of the policy which appears on the first page of the policy. That provision states, "term of insurance commencing 1–4–1978 and ending twelve months thereafter." Twelve months after January 4, 1978, is January 4, 1979. It is appellee's position that the term of insurance clause contradicts the language of the termination clause and that the two provisions construed together are ambiguous. G.I.C. then argues the long established rule that if an insurance policy is ambiguous, such ambiguity will be resolved in favor of insurance coverage. It is the position of appellant that the two policy provisions can be reconciled with each other so that both are given effect.

Initially, an insurance contract is to be construed on the same basis as any other contract. The appellant does not dispute that any ambiguity found within an insurance policy is to be construed in favor of insurance coverage; however, this rule of law does not come into effect until after it has been initially determined that the insurance policy is in fact ambiguous. In deciding that issue, the courts apply the same rules of construction which they apply to all other contracts. *See United American Insurance Co. v. Selby*, 161 Tex. 162, 168, 338 S.W.2d 160, 164 (1960). Courts look to the plain language of the insurance policy and give effect to that language if the parties' intent may be discerned from it. *Blaylock v. American Guarantee Bank Liability Insurance Co.*, 632 S.W.2d 719, 721 (Tex.1982). The courts

are reluctant to decide that a contract is in fact ambiguous. If a contract is so worded that a court may properly give it a certain or definite legal meaning, it is not ambiguous. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980). One of the first rules of contractual construction is that the entire contract must be considered in determining its meaning and no individual provision within the contract should be considered in isolation. *See Steeger v. Beard Drilling, Inc.,* 371 S.W.2d 684, 688 (Tex.1963). Accordingly, the preferred interpretation of a contract is one which provides meaning to every provision therein and does not read any provision contained within the contract out of the contract. *See Woods v. Sims,* 154 Tex. 59, 64, 273 S.W.2d 617, 620–21 (1954). Thus, under these rules, when this court decides whether the insurance contract at issue in the instant cause of action is in fact ambiguous, it should first attempt to reconcile the "term of insurance" provision on the first page of the policy with the "termination" provision on the second page of the policy. With regard to insurance contracts specifically, the supreme court has held that a contract will not be construed as to render some of its terms meaningless. *See Blaylock,* 632 S.W.2d at 722.

■ It was argued at the trial court by appellee that the fact that the "term of insurance" provision appears on the first page of the insurance policy means that it should prevail over the "termination" provision which appears on the second page. Unless the two provisions are inconsistent in the first place, the question of which provision governs over the other never arises. Courts are not at liberty to rewrite the contract between the parties without pleading and proof of fraud or mutual mistake, *Zidell v. John Hancock Mutual Life Insurance Co.,* 539 S.W.2d 162, 165 (Tex. Civ.App.—Dallas 1976, writ ref'd n.r.e.). Neither fraud nor mutual mistake has been pled in the instant cause of action.

■ When the applicable rules of contractual interpretation are applied to the insurance policy at issue, it becomes clear that the appellee's interpretation of the insurance policy is inconsistent with the rules of contractual interpretation. Eagle's interpretation is that coverage was for a term of twelve months beginning January 4, 1978, and normally expiring on January 4, 1979. If, however, any of the events listed in the "termination" provision occurred earlier than January 4, 1979, then the insurance policy would terminate on such earlier date. This interpretation gives meaning and effect to both the twelve month term of the policy and the policy's termination clause. The policy would have expired in any event on January 4, 1979, however, the policy's termination clause created the possibility that the policy might terminate earlier than its normal expiration date. Thus, both policy provisions are given meaning and effect. G.I.C.'s interpretation of the meaning of the insurance policy which contends that the policy could in no event expire prior to January 4, 1979, completely disregards the termination clause and reads it out of the policy all together, incontravention of the rules stated above.

We hold that the trial court erred in its implied conclusion of law that the insurance policy in question was ambiguous. Appellant's point of error one is sustained.

In light of our holding that the trial court erred in impliedly concluding that the policy provisions were ambiguous, it necessarily follows that the trial court erred in its implied conclusion of law that the insurance policy on the life of James D. Hampton was in effect at the time of his death. We hold that the insurance coverage expired on the scheduled maturity date of the indebtedness for which insured; to-wit: December 31, 1978.

Accordingly, we reverse the judgment of the trial court and here render judgment that the appellee, G.I.C. Insurance Company, take nothing by its cause of action.