The OHIO CASUALTY GROUP OF INSURANCE COMPANIES, Appellant,

v.

Frank R. CHAVEZ, Appellee.

No. 14–95–00985–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 6, 1997.

Rehearing Overruled April 17, 1997.

**656**

Frank H. Newton, William J. Boyce, Andrew L. Pickens, Houston, for appellant.

Arthur M. Glover, Jr., James B. Lewis, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

This case involves the interpretation of an automobile insurance policy "government vehicle" exclusion which was decided by the trial court on opposing motions for summary judgment. The trial court granted summary judgment in favor of the insured, and the insurance company appeals. We reverse and render judgment in favor of appellant.

### Background

On February 6, 1990, Frank R. Chavez ("Chavez"), appellee, was involved in an automobile accident with Royce Brooks ("Brooks"), an employee of the City of Houston. At the time of the accident, Brooks was driving a vehicle owned by the City of Houston and was within the course and scope of his employment. Brooks was covered by a liability policy issued by Farmers Texas County Mutual Insurance Company. Chavez sued Brooks, and placed The Ohio Casualty Group of Insurance Companies ("Ohio Casualty"), appellant, on notice that he would be pursuing an underinsured motorist claim under an automobile policy issued by Ohio Casualty to C.N. Building Services, Inc., a corporation co-owned by Chavez. Chavez never asserted a claim against Brooks' employer, the City of Houston.

Chavez, with the consent of Ohio Casualty, recovered policy limits of $25,000 from Brooks' insurer, and proceeded against Ohio Casualty on the underinsured motorist claim.[1] Chavez also asserted causes of action based upon Ohio Casualty's alleged "bad faith" insurance practices in connection with his claim. Ohio Casualty moved for partial summary judgment, contending that a government vehicle exclusion precluded coverage under the policy. Chavez objected to Ohio Casualty's summary judgment proof, and filed a cross-motion for summary judgment on the grounds that (1) the exclusion does not defeat coverage, (2) the exclusion is ambiguous, (3) the exclusion is against public policy, and (4) Ohio Casualty is estopped from denying coverage.

The trial court denied Ohio Casualty's motion for partial summary judgment, and granted an interlocutory partial summary judgment in favor of Chavez. The trial court severed the coverage issue from Chavez' remaining claims, making the dispositions of the summary judgment motions final and appealable. Ohio Casualty brings this appeal from the trial court's orders denying its motion for summary judgment and granting summary judgment in favor of Chavez.

### Standard of Review

■ The appropriate standard to be followed when reviewing a summary judgment is well-established:

1. the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that

---

**1.** It is undisputed that the limit of liability for uninsured/underinsured motorist benefits under the policy is $500,000.00.

it is entitled to summary judgment as a matter of law;

2. in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Karl v. Oaks Minor Emergency Clinic,* 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist] 1992, writ denied). When both parties file competing motions for summary judgment and one is granted and the other denied, the reviewing court will determine all issues presented, including the order denying the losing party's motion. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The reviewing court may reverse the trial court judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Id.* Where, as here, the summary judgment order does not specify the grounds upon which summary judgment was granted, the reviewing court will affirm the judgment if any of the theories advanced in the motion is meritorious. *State Farm & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

**Discussion**

 Before construing the policy at issue, we must first address Chavez' objection to Ohio Casualty's summary judgment proof. Chavez contends the trial court properly denied Ohio Casualty's motion for summary judgment because a fact issue exists regarding ownership of the vehicle that Brooks was driving. Chavez argues that Brooks' affidavit in support of the motion was insufficient to establish ownership because it failed to demonstrate how he gained personal knowledge of the facts recited therein. Therefore, Chavez claims, Ohio Casualty was required to present a certificate of title or an affidavit from the City of Houston to establish ownership of the vehicle. We disagree. A certificate of title is not required to prove owner-

ship of an automobile. *Mutual Fire and Auto. Ins. Co. v. Muckelroy,* 236 S.W.2d 555, 556–57 (Tex.Civ.App.—San Antonio 1951, no writ). Summary judgment may be based upon the uncontroverted affidavit of an interested witness if the evidence is clear, positive, direct and otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. Tex.R. Civ. P. 166a. Brooks' affidavit states that he has personal knowledge of the facts recited in the affidavit, that he was employed by the City of Houston and was in the scope of his employment when the accident occurred, and that the vehicle was owned by and licensed to the City of Houston. It may be reasonably assumed that such an affiant is particularly situated to know who owned the vehicle he was driving. *See Barham v. Sugar Creek Nat'l Bank,* 612 S.W.2d 78, 80 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ). Moreover, the affidavit could have been readily controverted but was not. Tex.R. Civ. P. 166a. We believe that Ohio Casualty's summary judgment proof was sufficient to establish ownership of the vehicle, and the trial court was correct in refusing to sustain Chavez' objections thereto.

*Construction of the Policy*

Ohio Casualty contends the trial court erred in granting summary judgment in favor of Chavez on the coverage issue because the government vehicle exclusion is clear and unambiguous. Chavez, on the other hand, claims that the exclusion does not apply to defeat coverage and, at the very least, is ambiguous and must be construed in favor of the insured.

 The determination of whether an insurance provision is ambiguous is a question of law for the court. *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983); *Vest v. Gulf Ins. Co.,* 809 S.W.2d 531, 533 (Tex.App.— Dallas 1991, writ denied). If it is determined that the contract provision is not ambiguous, interpretation of the unambiguous language is also a question of law. *Myers v. Gulf Coast Minerals Mgt. Corp.,* 361 S.W.2d 193, 196 (Tex.1962). The interpretation of insurance contracts in Texas is governed by the same rules that apply to interpretation of

other contracts. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). In construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent. *Forbau*, 876 S.W.2d at 133. The court must read all parts of the contract together to ascertain the agreement of the parties. *Id.* The contract must be considered as a whole, and each part of the contract should be given effect. *Id.; Coker*, 650 S.W.2d at 393 (holding court should give effect to all provisions of the contract so that none will be rendered meaningless).

■■■■■ An insurance provision is ambiguous when it is susceptible to more than one interpretation, each of which is fair and reasonable. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d at 666 (citing *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977), *Ramsay v. Maryland American General Ins. Co.*, 533 S.W.2d 344, 349 (Tex.1976), and *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex.1965)). The court will construe insurance policies strictly against the insurer and liberally in favor of the insured, particularly when dealing with exceptions and words of limitation. *Id.* (citing *Glover*, 545 S.W.2d at 761, and *Continental Casualty Co. v. Warren*, 152 Tex. 164, 254 S.W.2d 762, 763 (1953)). The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is reasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Glover*, 545 S.W.2d at 761 (citing *Warren*, 254 S.W.2d at 763). However, these rules apply only when an ambiguity exists in the policy. *Vest*, 809 S.W.2d at 533. "Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Id.* Thus, we must first determine whether the government vehicle exclusion in the Ohio Casualty policy is ambiguous.

■■■ The policy provides that Ohio Casualty will pay damages "which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** ...." (emphasis in original). Section F of the policy, entitled "Additional Definitions," defines an "**uninsured motor vehicle**" as follows:

6. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:

 d. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies but its Limit of Insurance is less than the Limit of Insurance for this coverage, or has been reduced by payment of claims to an amount less than the Limit of Insurance for this coverage.

 However "**uninsured motor vehicle**" does not include any vehicle or equipment,

 c. Owned by any governmental body unless the operator of the vehicle is uninsured and there is no statute imposing liability for damage because of **bodily injury** or **property damage** on the governmental body for an amount not less than the Limit of Insurance for this coverage.

(emphasis in original).

Chavez claims that, because an "uninsured motor vehicle" is defined in subsection 6(d) to include a vehicle "which is an underinsured motor vehicle," the terms "uninsured" and "underinsured" should be interpreted as synonymous in other contexts, including the government vehicle exclusion. Ohio Casualty argues that Chavez' proposed interpretation is unreasonable in light of the clear contractual language and does not create an ambiguity. Ohio Casualty further claims the government vehicle exclusion is so worded that the court may properly give it a definite legal meaning, and therefore it cannot be considered ambiguous as a matter of law. We agree.

Section F6(c) of the policy, recited above, excludes coverage for accidents involving government-owned vehicles "unless the operator of the vehicle is uninsured...." The term "uninsured" refers to the operator of the vehicle and is not specially defined in the policy. Therefore, the terms "operator" and

"uninsured" must be given "their plain, ordinary and generally accepted meaning, unless consideration of the instrument itself shows it to have been used in a different sense." *Tri County Serv. Co. v. Nationwide Mut. Ins. Co.*, 873 S.W.2d 719, 721 (Tex.App.—San Antonio 1993, writ denied)(citing *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 564, 261 S.W.2d 554, 557 (1953), *cert. denied*, 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1081 (1954)). Nowhere in the policy do these terms appear to have been used in a different sense, nor does the policy indicate that the terms "uninsured [operator]" and "uninsured motor vehicle" were intended to be synonymous. To the contrary, Ohio Casualty utilized bold letters and quotation marks to designate those terms that should be given a special meaning. One such term was "uninsured motor vehicle," which was specially defined to include an underinsured motor vehicle. Absent such specially defined meaning, the terms "uninsured" and "underinsured" are distinct terms under Texas law. *See, e.g., United Servs. Auto. Ass'n v. Hestilow*, 754 S.W.2d 754, 759 (Tex.App.—San Antonio 1988), *aff'd*, 777 S.W.2d 378 (Tex.1989). Nothing in the policy indicates that the term "uninsured" when used to refer to the operator of a vehicle was intended to include the term "underinsured" or be synonymous with the defined term "uninsured motor vehicle." Therefore, we must afford the terms "operator" and "uninsured" their plain, ordinary and generally accepted meaning. *Tri County Serv. Co.*, 873 S.W.2d at 721.

An "operator" is defined as one who "operates a mechanical device." THE AMERICAN HERITAGE DICTIONARY 871 (2d College Ed.1991). "Insured" means to be "cover[ed] with insurance." *Id.* at 667. Consequently, the term "uninsured" means not to be covered by insurance. *Id.* at 1313. It is undisputed that Brooks was an insured operator, therefore the government vehicle exclusion applied. When a contract is so worded that a court may properly give it a certain or definite legal meaning, it is not ambiguous. *Medical Towers, Ltd. v. St. Luke's Episcopal Hospital*, 750 S.W.2d 820, 822 (Tex.App.—Houston [14th Dist.] 1988, writ denied)(citing *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex.1980), and *Alba Tool and Supply Co., Inc. v. Industrial Contractors, Inc.*, 585 S.W.2d 662, 664 (Tex. 1979)). Although Chavez urges a different interpretation of the contract language, "not every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity ... neither conflicting expectations nor disputation is sufficient to *create* an ambiguity." *Forbau*, 876 S.W.2d at 134 (emphasis in original). The plain meaning of the term "uninsured" operator is that the person driving the vehicle has no insurance, not that the person driving the vehicle is underinsured. We find that the government vehicle exclusion is not ambiguous, and decline to accept Chavez' interpretation of the policy language.

### Public Policy

■ Chavez argues that public policy supports an interpretation of the contract in favor of the insured because the purpose of TEX. INS.CODE ANN. art. 5.06–1[2] is "to put the motorists injured in a collision with an uninsured vehicle in the same position that they would have been in had the other motorists been properly insured." *Greene v. Great American Ins. Co.*, 516 S.W.2d 739, 743 (Tex. Civ.App.—Beaumont 1974, writ ref'd n.r.e.). However, as pointed out by Ohio Casualty, the Texas Supreme Court has responded to this argument in *Francis v. International Serv. Ins. Co.*, 546 S.W.2d 57 (Tex.1976).

**2.** The provisions in effect at the time of the accident between Chavez and Brooks were, in pertinent part, as follows:

5.06—1(2)(c) The State Board of Insurance is hereby authorized to promulgate the forms of the uninsured and underinsured motorist coverages. The Board may also, in such forms, define 'uninsured motor vehicle' to exclude certain motor vehicles whose operators are in fact uninsured.

5.06—1(5) The underinsured motorist coverage shall provide for payment to the insured of all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount up to the limit specified in the policy, reduced by the amount recovered or recoverable from the insurer of the underinsured vehicle.

TEX. INS.CODE ANN. art. 5.06—1 (Vernon 1981 and Supp.1995).

In *Francis*, the insured collided with a fire truck owned by the City of Grand Prairie and operated by a city fireman. *Id.* at 58. The insured sought recovery from her insurance company under the uninsured motorist provision. *Id.* Neither the City of Grand Prairie nor the fireman had a policy of liability insurance in effect at the time of the accident. *Id.* at 59. The insured's policy contained the following exclusion:

> ... the term "uninsured automobile" shall not include:
>
>> (3) an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing.

*Id.* at 58 n. 2. The sole question before the court was the validity of the governmental exclusion. The court examined the provision of the Texas Insurance Code which stated: "[t]he Board may also, in such forms define 'uninsured motor vehicle' to exclude certain motor vehicles whose operators are in fact uninsured." *Id.* at 59 (citing TEX. INS.CODE. ANN. art. 5.06–1). The court concluded that the purpose of the Act was not to protect insureds from all negligent uninsured motorists, but only from those uninsured motorists who were financially irresponsible. *Id.* at 61. The court reasoned as follows:

> We believe that the purpose of the Act is ... to protect the conscientious and thoughtful motorist against losses caused by negligent financially irresponsible motorists. The Legislature did not intend uninsured motorists to be covered by this Act, but only those uninsured motorists who are 'financially irresponsible.'
>
> . . . . .
>
> [The Act] was not designed as a system for giving relief to people who cannot recover from a tortfeasor because of sovereign immunity.... That a governmental unit is protected by sovereign immunity

would certainly preclude recovery from that unit, but that does not mean that the unit is 'financially irresponsible' for purposes of the Texas Uninsured Motor Vehicle Act.

*Id.* at 61. The *Francis* court upheld the absolute exclusion of government-owned vehicles from the uninsured motorist coverage based upon the purposes of the Act. *Id.* at 62.

In the instant case, if Brooks had been completely uninsured as the fireman had been in *Francis*, Chavez would have been covered. Thus, Chavez' policy actually provides more coverage than did the policy in *Francis*. Moreover, like the City of Grand Prairie, the City of Houston is not the type of financially irresponsible party that the Legislature intended to cover with the Act. *Id.* In fact, the City of Houston could have been liable to Chavez under the Texas Tort Claims Act for money damages up to $250,000.00. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.023(c) (Vernon 1986 and Supp.1995). Chavez chose, however, not to assert a claim against the City of Houston.

Chavez argues that *Francis* is distinguishable because (1) it does not resolve the issue as to an underinsured motorist, and (2) the Ohio Casualty insurance policy is more confusing and ambiguous than the one in *Francis*. We disagree. *Francis* was decided based upon reasoning equally applicable to underinsured motorists. If the *Francis* absolute exclusion of government-owned vehicles from coverage at a time when sovereign immunity barred the insured's recovery did not violate public policy, the qualified exception in the Ohio Casualty policy at a time when Chavez could pursue the City of Houston for liability up to $250,000 cannot violate public policy.[3] We decline to otherwise distinguish *Francis* because we have already found that the government vehicle exclusion in the present case was unambiguous. In sum, we do not agree that public policy favors interpretation of the insurance contract

---

3. Chavez cites numerous cases from other states in which government vehicle exclusions were held to be against public policy. However, those cases deal with statutes that did not authorize exclusion from uninsured motorist coverage of vehicles whose operators were, in fact, uninsured. *See, e.g., Cropper v. State Farm Mut.*

*Auto. Ins. Co.*, 671 A.2d 423, 426–27 (Del.1995) (listing the various jurisdictions which hold the exclusion to be against public policy and comparing them to the jurisdictions, including Texas, where such exclusions have been held to be within the state's public policy).

and exclusionary language in favor of Chavez.

### Estoppel

Chavez also alleged in his motion for summary judgment that Ohio Casualty is barred from denying coverage based upon equitable estoppel.[4] Specifically, Chavez contends Ohio Casualty did not deny coverage or claim an exclusion under the policy for over two years after the claim was made. Instead, Ohio Casualty requested additional information, leading Chavez to believe that the delay in payment was due to the time required to gather information on the claim rather than a denial of coverage. As a result, Chavez claims, Ohio Casualty is now estopped from denying coverage.

To establish equitable estoppel, Chavez must show: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge, or the means of knowledge, of those facts; (5) who detrimentally relied upon the misrepresentation. *Collins v. Allied Pharmacy Mgmt.,* 871 S.W.2d 929, 937 (Tex.App.—Houston [14th Dist.] 1994, no writ) (citation omitted). Chavez presented no summary judgment proof to establish the elements of equitable estoppel.[5] No summary judgment proof was offered to show that Ohio Casualty made false representations to or concealed material facts from Chavez, or that Chavez relied thereon to his detriment. Equitable estoppel cannot be maintained on the mere allegation that the insurance company did not deny coverage for two years. An argument of estoppel cannot create coverage where none exists. *Nielson v. Allstate Ins. Co.,* 784 S.W.2d 735, 737 (Tex.App.—Houston [14th Dist.] 1990, no writ). We find that the summary judgment proof did not raise a fact issue on Chavez' equitable estoppel claim.

Accordingly, we reverse the trial court's summary judgment in favor of Chavez, and render judgment in favor of Ohio Casualty on the ground that Chavez' claims are excluded from coverage under the policy's unambiguous language.

---

4. In his brief to this court, Chavez argues that Ohio Casualty is also barred under a theory of promissory estoppel. Chavez, however, made no such argument to the trial court in his motion for summary judgment and therefore failed to preserve error. Issues not expressly presented to the trial court may not be considered at the appellate level either as grounds for reversal or as grounds to support summary judgment. *See Dickey v. Jansen,* 731 S.W.2d 581, 583 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

5. Although Chavez' petition alleged various extracontractual causes of action against Ohio Casualty based upon its handling of his claim, equitable estoppel was not one of them. Rather, estoppel was raised as an affirmative defense to Ohio Casualty's denial of coverage. Therefore, Chavez had the burden of proof to establish each element of his affirmative defense as a matter of law. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990).