# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00006-CV

**Nealey Michelle Malham, Appellant**

**v.**

**Government Employees Insurance Company, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 232,480-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Nealey Michelle Malham appeals a take-nothing judgment in her suit for benefits under an uninsured motorist coverage provision contained in her Texas Personal Auto Policy issued by Government Employees Insurance Company ("GEICO"). We will affirm the trial court's judgment.

## BACKGROUND

Malham was injured in a motor vehicle accident in which the car in which she was a passenger was struck by a pickup truck owned by the City of Killeen and driven by a city employee while in the course and scope of his employment. Malham sued the City and its employee alleging that she suffered injuries as the result of the employee's negligent acts and omissions and that the City was vicariously liable for the negligence of its employee. Malham settled her claims against the City and the employee in exchange for payment to her of $87,500. Thereafter, Malham filed a

claim under the uninsured motorist coverage provision of her GEICO policy seeking to recover medical expenses related to back surgery she alleges was recommended to treat injuries sustained in the accident. In the underlying cause of action, Malham sought a declaration that the City vehicle that struck the car she was riding in was an "uninsured motor vehicle," as that term is defined in her contract with GEICO, and that she was entitled to recover $300,000 from GEICO under the terms and conditions of the uninsured-motorist coverage contained in the policy. The parties agreed to a bifurcated trial whereby they would first try the coverage issues, which presented pure questions of law, to the court and then set any remaining liability and damages issues for a subsequent jury trial. After a bench trial, the court rendered a final take-nothing judgment in GEICO's favor. The court entered findings of fact and conclusions of law supporting its conclusion that GEICO was not liable to Malham for the payment of any uninsured motorist benefits under the terms and conditions of her GEICO policy. This appeal followed.

## DISCUSSION

At the time of the accident, Malham's GEICO policy contained the following Uninsured/Underinsured Motorist Coverage provision:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

The parties do not dispute that Malham is a "covered person" or that she was legally entitled to recover damages from the City as a result of the accident. The sole point of disagreement between

2

the parties with respect to the above-quoted provision is whether the City vehicle that caused the accident was an "uninsured motor vehicle" under the GEICO policy.

The GEICO policy contains, in pertinent part, the following definition:

I. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

. . . .

II. However, "uninsured motor vehicle" does not include any vehicle or equipment:

. . . .

2. Owned or operated by a self insurer under any applicable motor vehicle law.

3. Owned by any governmental body unless:

a. the operator of the vehicle is uninsured; and

b. there is no statute imposing liability for damage because of bodily injury or property damage on the governmental body for an amount not less than the limit of liability for this coverage.

Malham contends that, under the foregoing provisions, the City-owned vehicle that struck the car in which she was a passenger was an "uninsured motor vehicle" under the GEICO policy definition and that the trial court erred in concluding otherwise. We disagree.

The City is a party to a Liability/Property Interlocal Agreement (the "Agreement"), which creates the Texas Municipal League Joint Self-Insurance Fund (the "Fund") for the purpose

of "providing coverages against risks which are inherent in operating a political subdivision."[1] The City and other political subdivisions that are parties to the Agreement are referred to as "Pool Members." The Agreement incorporates a Texas Municipal League Liability Self-Insurance Plan (the "Plan") along with accompanying Declarations of Coverage. The liability coverage document associated with the Plan provides, in part, that "the Fund will pay on behalf of the Member or Covered Party all sums which the Member or Covered Party shall become legally obligated to pay as damages . . . because of bodily injury or property damage . . . arising out of the ownership, operation, use, loading, unloading or maintenance of an automobile." "Covered Party" includes the Pool Member—in this case the City—and any employee of the City acting within the scope of his or her duties or employment. The associated "Automobile Declarations of Coverage" provide that the limit of liability for each occurrence is $2,000,000.[2] The question before this Court, then, is whether the liability coverage provided for by the Agreement constitutes a "liability policy" as that term is used in the GEICO policy. We conclude that it does.

Insurance policies are interpreted according to the general rules of contract construction. *See American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). The primary concern in interpreting a contract is to determine the true intent of the parties. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a written contract is so worded that it can be given a definite or certain legal meaning, it is not ambiguous. *Id.*; *Coker*

---

[1] The Agreement describes the Fund as a "risk sharing mechanism to cover liability exposures."

[2] "Occurrence" is defined as "an accident which results in bodily injury or property damage neither expected nor intended from the standpoint of the Member or Covered Party."

*v. Coker*, 640 S.W.2d 291, 393 (Tex. 1983).  If, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is said to be ambiguous.  *CBI Indus. Inc.*, 907 S.W.2d at 520.  Whether a contract is ambiguous is a question of law for the court to decide. *Id.*  When a policy permits only one reasonable interpretation, we construe it as a matter of law and enforce it as written.  *See Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992).  A term not specifically defined by an insurance policy must be given its plain, ordinary, and generally accepted meaning, unless consideration of the policy itself shows it to have been used in a different sense. *See Ohio Cas. Group of Ins. Cos. v. Chavez*, 942 S.W.2d 654, 658-59 (Tex. App.—Houston [14th Dist.] 1997, writ denied).  Mindful of these rules of construction, we consider the meaning of the words "liability policy" in the GEICO policy.

The word "policy" is defined as a "document containing a contract of insurance." Black's Law Dictionary 1276 (9th ed. 2009).  "Insurance" means "a contract by which one party (the insurer) undertakes to indemnify another party (the insured) against risk of loss, damage, or liability arising from the occurrence of some specified contingency."  *Id.* at 870.  "Liability insurance" is "an agreement to cover a loss resulting from the insured's liability to a third party."  *Id*. at 873.  As noted above, pursuant to the terms of the Agreement, the Fund has undertaken to pay on the City's behalf all sums which the City is legally obligated to pay as damages for bodily injury or property damage arising out of the City's use of its automobiles.  The Agreement provides coverage, up to specified limits, for such damages and therefore constitutes a "liability policy" under the plain, ordinary, and generally accepted meaning of that term.

Although Malham does not dispute that the Agreement essentially functions as insurance, she maintains that it does not constitute a "liability policy" under the terms of the GEICO policy. Malham contends that the term "liability policy" must be strictly construed to mean only a contract called an "insurance policy" issued by an "insurance company" as those terms are defined under the Texas Insurance Code. Malham argues that because the Agreement is not one issued by an insurance company regulated by the State Board of Insurance, it is not "insurance" within the meaning of the GEICO policy. As an initial matter, we note that the GEICO policy definition of uninsured motor vehicle does not use the words "insurance policy." Rather, it refers to the absence of a "liability bond or policy."[3] And there is nothing in the GEICO policy that restricts the term "liability policy" in the narrow and technical manner urged by Malham. The plain, ordinary, and generally accepted meaning of the term "liability policy" embodies a broader notion that includes not only an insurance company-issued insurance policy, but also the type of third-party liability coverage provided by the Agreement.[4] Consequently, we overrule Malham's first three appellate issues.

In issues four, five, and six, Malham contends that the City vehicle is an uninsured motor vehicle by virtue of an exception to the GEICO policy's government-owned-vehicle exclusion.

---

[3] Malham agrees that "liability" modifies both "bond" and "policy."

[4] We note that the Texas Supreme Court is in accord that the type of coverage provided by the Agreement is "insurance coverage" as the term is commonly used. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 322, 327-28 (Tex. 2006) (describing underlying suit as brought by fund member after fund "denied a claim for benefits under its policy" and issue on appeal as whether "in this insurance coverage dispute . . . a self-insurance fund composed of local political subdivisions enjoys governmental immunity against a fund member school district's coverage claim").

Malham reads the exception to the exclusion to mean that a government-owned vehicle is an "uninsured motor vehicle" when (1) the operator of the vehicle is uninsured and (2) there is no statute imposing liability for damage because of bodily injury or property damage on the governmental body for an amount not less than the limit of liability for this coverage. There is no dispute that the second prong is met here. However, Malham asserts that the first prong has also been met, again relying on her contention that the Agreement is not insurance coverage under the GEICO policy. Because we have already concluded that the Agreement provides the City and its employees liability coverage and constitutes a "liability policy," the operator of the City-owned vehicle was not "uninsured." Consequently, only one of the prongs of the two-prong test has been met, the exception to the government-owned-vehicle exclusion does not apply, and the City's vehicle was not an "uninsured motor vehicle" under Malham's interpretation of the government-owned-vehicle exclusion provision in the GEICO policy. We overrule Malham's fourth, fifth, and sixth appellate issues.

In issues seven, eight, nine, and ten, Malham contends that the City-owned vehicle was uninsured because the City did not meet the requirements of a "self-insurer" under the Texas Transportation Code. The GEICO policy includes a provision that excludes from the definition of an "uninsured motor vehicle" any vehicle "owned or operated by a self insurer under any applicable motor vehicle law." Malham argues that the City's vehicles are not excluded from the definition of an "uninsured motor vehicle" by virtue of this provision because the City is not a "self insurer" under Malham's understanding of that term in the GEICO policy. Having already concluded that a "liability policy" applies to the City's vehicles and that as a result they are not "uninsured motor

7

vehicles" under the GEICO policy, we need not decide whether the City's vehicle also falls outside the definition of "uninsured motor vehicle" by application of this exclusion. Consequently, we do not address the arguments contained in issues seven, eight, nine, and ten.

Malham's eleventh and twelfth issues address the amount of coverage that would be available to her under the GEICO policy if the City-owned vehicle were in fact an "uninsured motor vehicle." Because we have concluded that it is not, we need not address the arguments contained in issues eleven and twelve.

## CONCLUSION

The trial court did not err in concluding that the City-owned vehicle that caused the accident for which Malham seeks to recover damages was not an "uninsured motor vehicle" as that term is used in the GEICO policy. The trial court's judgment that Malham take nothing by way of her claim for benefits under the uninsured motorist provision of that policy is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: February 8, 2012

8