

# NUMBER 13-12-00072-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

CENTURY SURETY COMPANY,                        **Appellant,**

**v.**

JOHN DELOACH D/B/A DELOACH
VACUUM SERVICE AND DELOACH
OIL & GAS WASTE WELL,                             **Appellee.**

---

### On appeal from the 75th District Court
### of Liberty County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant, Century Surety Company, appeals the trial court's summary judgment

in favor of appellees, DeLoach d/b/a DeLoach Vacuum Service and DeLoach Oil & Gas

Waste Well (collectively, DeLoach).   By two issues, Century argues that it does not have

a duty to defend DeLoach in four underlying lawsuits.   We affirm.[1]

## I.   Background

## A.      The Underlying Lawsuits

DeLoach owned and operated a waste disposal well in the Hull Salt Dome in Daisetta, Texas.   DeLoach purchased a Commercial General Liability Policy (CGLP) for its business from Century, and the coverage was effective from September 2007 through September 2008.   In May 2008, a sinkhole formed where DeLoach was performing its operations, and four lawsuits (the underlying lawsuits) were filed in connection with the sinkhole.

The first case, *Wells v. De-vac, Inc.*, involved two sets of plaintiffs:   the Wellses and the Ryans.   The plaintiffs alleged that "[t]he underground pressure created by the collapse at the sinkhole site caused an abandoned, unplugged oil well . . . to explode . . . and it flowed thousands of deleterious substances across much of their property and onto real property owned by the Ryan plaintiffs."   The plaintiffs further alleged that the sinkhole caused them to suffer, among other things, the loss of vegetation and aesthetic value of the property, the loss of a potential buyer for the property, and the overall diminished property value.

In the second case, *City of Daisetta v. DeLoach*, the plaintiff alleged the substances and chemicals injected by DeLoach and other named defendants penetrated protected groundwater.   The plaintiff further alleged that its "enjoyment and use of the property had been adversely impacted to such a degree that the value of the property in

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket equalization order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

its current condition is negligible at best." Finally, the plaintiff asserted a cause of action for trespass because its "[p]roperty was detrimentally affected as the direct result of contaminants encroaching upon its property from an uncontrolled surface."

The final two cases, *Arceneaux v. Charles McCarty, Inc.* and *Arceneaux v. De-Vac, Inc* were multi-plaintiff cases, which involved essentially the same complaint. The plaintiffs alleged that "[t]he sinkhole and corresponding water contamination, caused by the acceptance and injection of excess amounts of toxic and hazardous wastes, chemicals, solvents and substances into the disposal wells owned and operated by Defendants, are the proximate and producing cause of the damages accruing to Plaintiff." The plaintiffs further alleged that they were harmed by the sinkhole because "substances/chemicals have penetrated protected groundwater, or such penetration of the protected groundwater is imminent. Plaintiffs' use and enjoyment of their property in its current condition is negligible at best."

## B.    Declination of Coverage

DeLoach tendered an insurance claim to Century on July 21, 2008. The CGLP provided, in relevant part, that "[Century] will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The CGLP also provided that the insurance was only applicable to "bodily injury" or "property damage" if the "bodily injury" or "property damage" was caused by an "occurrence" that took place in the coverage territory. The CGLP defined property damage as:

> a.  Physical injury to tangible property, including all resulting loss of use of the property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Century sent DeLoach a reservation of rights letter on August 11, 2008, and later denied coverage on September 28, 2009. Century declined to cover DeLoach based upon Section I of the CGLP, the Total Pollution Exclusion (the Pollution Exclusion), and the Oil and Gas Amendatory Endorsement (the Oil and Gas Endorsement). Section I of the CGLP pertained to coverages, and expressed that the insurance did not apply to "[p]roperty you [DeLoach] own, rent, or occupy." Century declined coverage pursuant to Section I generally, because "[the sinkhole was] alleged to have occurred on property on which [DeLoach] conducted operations."

The Pollution Exclusion stated that the insurance did not apply to " . . . 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The CGLP defined a "pollutant" as " . . . any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Century declined coverage under the Pollution Exclusion, specifically, because the "[c]ontamination through the release of deleterious substances," as alleged by the Wells plaintiffs, qualified as a pollutant as defined by the CGLP and therefore barred coverage.

Finally, Century claimed the Oil and Gas Endorsement precluded coverage as to the Wells plaintiffs because their allegations pertained to property damage resulting from a sinkhole, and the Oil and Gas Endorsement excluded "'property damage' which would not have occurred in whole or in part but for movement of the earth or land, including by

4

the extraction of underground wells." In other words, Century claimed that the Oil and Gas Endorsement clearly excluded claims based upon the movement of the earth.

## C.  Procedural History

After Century declined coverage for the underlying lawsuits, DeLoach sought a declaratory judgment stating Century had a duty to defend DeLoach in the underlying lawsuits. DeLoach filed a traditional motion for partial summary judgment on its declaratory judgment claim, arguing that the claims asserted against it fell within the scope of coverage and that the exclusions advanced by Century as a basis for denying coverage were either inapplicable or superseded by a conflicting endorsement. Specifically, DeLoach argued that the application of the Pollution Exclusion would render coverage under the Blowout and Cratering Coverage Endorsement (the Blowout Endorsement) illusory as a matter of law.

Century filed a cross-motion for traditional summary judgment, arguing that it was entitled to judgment as a matter of law because the underlying lawsuits did not trigger Century's duty to defend. Century asserted that the Pollution Exclusion and Oil and Gas Endorsement precluded coverage of the underlying lawsuits and that the Blowout Endorsement did not supersede the Pollution Exclusion. Century also argued that DeLoach's claim was also barred by the Oil and Gas Endorsement 's "Mold, Fungi, Virus, Bacteria, Air Quality, Contaminants, Mineral or Other Harmful Materials" exclusion (the Mold Exclusion). DeLoach replied to Century's cross-motion, arguing that the Blowout Endorsement conflicted with and superseded the Pollution Exclusion.

The trial court ruled in favor of DeLoach, finding that Century had

a duty to participate in the defense of the claims asserted against [Century]

5

in the Underlying Lawsuits because there is a potential for coverage giving rise to an obligation of the part of [DeLoach] to defend and any doubts regarding as must be resolved in favor of the insured, [DeLoach]. It is further ordered that [Century 's] cross motion is denied.

The district court then severed DeLoach's claims for declaratory judgment on the duty to defend issue from the remaining claims in the lawsuit, and this appeal followed.

## II. Standard of Review and Applicable Law

### A. Competing Motions for Summary Judgment

We review the trial court's summary judgment de novo. *Valence Operating Co., v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see also Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). At trial, the movant for traditional summary judgment has the burden of showing genuine issues of material fact do not exist and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When determining whether a genuine fact issue exists, the court takes all evidence favorable to the nonmovant as true and makes all reasonable inferences in favor of the nonmovant. *KPMG Peat Marwick*, 988 S.W.2d at 748.

When both parties move for summary judgment, each party bears the burden of establishing entitlement to judgment as a matter of law. *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000); *see also Jones*, 745 S.W.2d at 900. When the trial court grants one motion and denies the other, the reviewing court examines the summary judgment evidence presented by both parties and determines all questions presented. *City of Garland*, 22 S.W.3d at 356. The reviewing court should render the judgment that the trial court should have rendered or reverse and remand if neither party

6

has met the summary judgment burden.  *Id.*

## B.     The Duty to Defend

Whether an insurer owes a duty to defend to the insured is a question of law that the appellate court reviews de novo.  *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.—Fort Worth 1996, writ denied).  An insurer only has to defend cases within the policy coverage.  *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982).  Thus, the insurer does not have a duty to defend unless the petition in the underlying suit contains allegations of fact that fall within the scope of coverage provided for in the policy of insurance.  *Spurgeon v. Coan & Elliot*, 180 S.W.3d 593, 598 (Tex. App.—Eastland 2005, no pet.).

Courts determine the duty to defend based upon the allegations in the underlying pleadings and the language of the insurance policy.  *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965).  This is sometimes referred to as the "eight corners" rule.  *Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 829 (Tex. App.—Dallas 1992, writ denied).  In applying the eight corners rule, courts give the allegations in the pleadings of the underlying lawsuit a liberal interpretation.  *Id.* Accordingly, when construing the allegations of the underlying suit, courts strictly construe the pleadings against the insurer and resolve any doubt in favor of coverage. *Heyden Newport Chem.*, 387 S.W.2d at 26.  However, in determining the duty to defend, courts may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage.  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

## C.     Contract Construction

Courts should interpret contracts in a manner that provides meaning to every provision and does not read any terms out of the contract. *Eagle Life Ins. Co. v. G.I.C. Ins. Co.*, 697 S.W.2d 648, 651 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). In other words, courts should consider contracts as a whole and should give effect to each part of the contract. *Ohio Cas. Group of Ins. Cos. v. Chavez*, 942 S.W.2d 654, 658 (Tex. App.—Houston [14th Dist.] 1997, writ denied). With regard to the interpretation of insurance contracts, terms in a policy conflict if application of one term or endorsement would render another term or endorsement meaningless. *See Mesa Operating Co., v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754–55 (Tex. App.—Dallas 1999, pet. denied).

### III. Discussion

By two issues, Century argues that it does not have a duty to defend DeLoach in the underlying lawsuits. Specifically, Century argues that (1) the Pollution Exclusion excluded coverage because the underlying lawsuits alleged property damage due to contamination from harmful substances, and (2) the Oil and Gas Endorsement also excluded coverage because the underlying lawsuits alleged property damage from harmful substances.

Century and DeLoach agree that, if applicable, the Pollution Exclusion excluded the underlying lawsuits from coverage. However, DeLoach argued in the trial court and now on appeal that the Pollution Exclusion was inapplicable because application of the endorsement would render the Blowout Endorsement and the Underground Resources Coverage Endorsement (the Underground Resources Endorsement) in the CGLP illusory. DeLoach further argues that the Blowout Endorsement and Underground Resources Endorsement supersede the Pollution Exclusion because of the coverage

8

conflict. DeLoach bases its argument upon the presumption that the Blowout Endorsement expanded the coverage within the CGLP. Century disagrees, arguing that the Blowout Endorsement did not expand coverage, but modified and limited the coverage of the CGLP.

## A. Expansion of Coverage

Century argues that the Blowout Endorsement did not expand coverage because (1) the policy is not limited to a particular hazard, (2) the endorsement contains no language granting or extending coverage, and (3) DeLoach did not pay any additional premium for blowout and cratering coverage beyond the main policy. Century further contends that the Blowout Endorsement actually limits coverage because (1) the endorsement applied a lower aggregate for property damage, (2) the endorsement added exclusions, and (3) the endorsement imposed a duty on Century to control wells involved in blowout and cratering occurrences.

We conclude that the Blowout Endorsement expands coverage rather than limits an existing coverage. The first full paragraph of the Blowout Endorsement states, "[t]he following provisions are *added* with respect to 'property damage' included within the 'blowout & cratering hazard' arising out of the operations performed by you or on your behalf." (Emphasis added.) The endorsement then goes on to provide limitations, exclusions, and definitions. *See Lamar Homes, Inc v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007) (holding that a comprehensive general liability policy is structured to provide a broad grant of coverage, which is then limited by specific exclusions and other language). Thus, the express language in the Blowout Endorsement indicated that the purpose of the endorsement was to add coverage for a

9

blowout and cratering hazard.   *See Eagle Life Ins. Co.*, 697 S.W.2d at 651; *Ohio Cas. Group of Ins. Cos.*, 942 S.W.2d at 658; *Mesa Operating Co.*, 986 S.W.2d at 754–55.

In support of its argument that the Blowout Endorsement did not expand coverage because DeLoach did not pay an additional premium, Century references *Primrose Operating Company v. National American Insurance Company*, in which the insured paid two separate premiums.   *See* 382 F.3d 546, 559 (5th Cir. 2004).   In *Primrose,* the court found that the endorsements at issue could not be read to be dependent because the insured had paid two separate premiums.   *Id.*   However, we find *Primrose* to be distinguishable because there is no proof in this case that Century asked or required DeLoach to pay a separate premium for the Blowout Endorsement.

**B.     Conflict between the Pollution Exclusion and the Blowout Endorsement**

Century next argues that the Pollution Exclusion and Blowout Endorsement did not conflict because "[d]irect physical damage to persons or property may occur without any pollution."   However, the Pollution Exclusion and Blowout Endorsement language and the authority cited by Century do not support Century's argument.

The Pollution Exclusion states, "[t]his insurance does not apply to:   . . . 'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."   The Blowout Endorsement states:

> 'Blowout & Cratering Hazard' includes 'property damage' to any of the following: a. Any 'property damage' . . . due to a 'blowout' [i.e.] the earth arising out of or consequence of the uncontrolled flow of gas or fluids from a well, wellhead or borehole; b. Any 'property damage' . . . due to 'cratering,' [i.e.] the earth arising out of or a consequence of subsidence, depression, erosion, or expulsion of the earth's surface around or adjacent to a well, wellhead or borehole cause by the erosive or eruptive

action of gas or fluids flowing to the surface.

We do not believe that an occurrence covered under the Blowout Endorsement could necessarily arise in the absence of pollution, which the Pollution Exclusion excludes from coverage. Thus, the Pollution Exclusion renders the Blowout Endorsement meaningless. *See Mesa Operating Co.*, 986 S.W.2d at 754–55.

Century relies on *Smith v. Cudd Control Inc.* as an example of a case where a blowout event with multiple fatalities occurred in the absence of pollution. *See* 126 S.W.3d 106, 108 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). However, the background of the case does not describe the exact events or cause of the blowout, only that a fire occurred. *Id.* The fact that pollutants were not mentioned in *Smith* and were not a cause of the property damage in that case does not change our conclusion based on the specific language of the policy in this case. In short, we are not persuaded by *Smith* to ignore the clear contradiction between the Pollution Exclusion and Blowout Endorsement. And because we must construe the underlying lawsuits to trigger coverage and because there is a conflict between the Pollution Exclusion and the Blowout Endorsement that renders the Blowout Endorsement meaningless, we conclude that the Blowout Endorsement supersedes the Pollution Exclusion. *See Heyden Newport Chem.*, 387 S.W.2d at 26; *Eagle Life Ins. Co.*, 697 S.W.2d at 651; *Ohio Cas. Group of Ins. Cos.*, 942 S.W.2d at 658; *Mesa Operating Co.*, 986 S.W.2d at 754–55.

## C.    Oil and Gas Endorsement Preclusion

Finally, Century contends that the Oil and Gas Endorsement precluded coverage of the underlying lawsuits because of the Mold Exclusion. Specifically, Century argues the Mold Exclusion is applicable to the underlying lawsuits because "subpart d" of the

11

exclusion excludes property damage "arising out of, caused by, or alleged to be contributed to in any way by the toxic or hazardous properties of minerals or other substances." As with the "pollutants" in the Pollution Exclusion, it seems unlikely that a blowout could occur in the absence of the release of "toxic or hazardous property of minerals or other substances." *See Mesa Operating Co.*, 986 S.W.2d at 754–55. Thus, there is a conflict between the Mold Exclusion and the Blowout Endorsement, and like with the Pollution Exclusion, application of the Mold Exclusion would render the Blowout Endorsement meaningless. Because we must liberally construe the pleadings and resolve any doubts in favor of coverage, we conclude that the Blowout Endorsement supersedes the Mold Exclusion. *See Heyden Newport Chem.*, 387 S.W.2d at 26; *Eagle Life Ins. Co.*, 697 S.W.2d at 651; *Ohio Cas. Group of Ins. Cos.*, 942 S.W.2d at 658; *Mesa Operating Co.*, 986 S.W.2d at 754–55.

## D. Groundwater Allegations

Finally, Century contends that even were we to conclude that their duty to defend was triggered, the claims of the City of Daisetta and Arceneaux plaintiffs are solely for groundwater damage and are specifically excluded under the terms of the Blowout Endorsement, which only covers above-surface damage. Century contends that it, therefore, has no duty to defend the City of Daisetta and Arceneaux suits. DeLoach concedes that the Blowout Endorsement applies only to above-surface damage, but argues that a liberal construction of the City of Daisetta and Arceneaux suits reveals allegations of "both above- and below-surface property damage." We agree with DeLoach.

As discussed above, we must take a liberal view of the plaintiffs' pleadings in the

12

underlying suits, strictly construing the allegations against the insurer and resolving any doubts in favor of coverage. *See Heyden Newport Chem.*, 387 S.W.2d at 26; *see also Cluett*, 829 S.W.2d at 829. In other words, a duty to defend exists when the allegations in the petition, liberally construed, are potentially covered by the policy. *Dallas Nat'l Ins. Co. v. Sabic Americas, Inc.*, 355 S.W.3d 111, 117 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). And "[i]f potential coverage exists 'for any portion of the suit, an insurer must defend the entire suit.'" *Id.* (quoting *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex. App.—Dallas 2000, no pet.)).

It is true that both the City of Daisetta and Arceneaux plaintiffs allege damage to their ground water, which we assume without deciding for purposes of our analysis is excluded from coverage. However, the City of Daisetta's petition also alleges that its "[p]roperty was detrimentally affected as the direct result of contaminants encroaching upon its property from an uncontrolled surface" and that the "enjoyment and use of [its] property had been adversely impacted to such a degree that the value of the property in its current condition is negligible." Similarly, the Arceneaux plaintiffs allege that their "use and enjoyment of their property in its current condition is negligible at best." These allegations, liberally construed, arguably reference both the above- and below-ground use, and resulting value, of their properties, and because we must construe the allegations against the insured and resolve any doubts in favor of coverage, we conclude that the City of Daisetta and Arceneaux plaintiffs alleged above-ground property damage that is potentially covered by DeLoach's policy and therefore triggers Century's duty to defend. And because there is a potential for coverage for a portion of these suits, Century has a duty to defend DeLoach against the entire suit.

13

## E.    Summary

We conclude that DeLoach showed that he was entitled to summary judgment on his declaratory judgment claim.   *See* TEX. R. CIV. P. 166a(c).   He proved as a matter of law that the Blowout Endorsement expanded coverage, the Pollution Exclusion conflicted with the Blowout Endorsement, and the Mold Exclusion within the Oil and Gas Endorsement conflicted with the Pollution Exclusion.   He was therefore entitled to a declaration that Century's duty to defend was triggered in all of the underlying lawsuits. The trial court did not err in ruling as such, granting DeLoach's motion for summary judgment, and denying Century's motion for summary judgment.   *See City of Garland*, 22 S.W.3d at 356.   Century's appellate issues are overruled.

## IV.  Conclusion

We affirm the judgment of the trial court.


NELDA V. RODRIGUEZ
Justice

Delivered and filed the
1st day of August, 2013.

14